## Tribble vs. Taul.

Error to the Clarke Circuit; GEO. SHANNON, Judge.

*Set-off in equity. Jurisdiction. Judicial decisions. Constitutional law.*

Judge MILLS delivered the Opinion of the Court.

A NOTE was given by Taul to Jones, who sold it to Tribble without assignment. Tribble, in the name of Jones' administrator, after his death, brought his warrant against Taul, and recovered judgment before a justice of the peace.

Taul filed this bill for a set off against the judgment, and obtained it, setting up an account for fees due him, for services as counsel and attoiney at law, from Tribble, rendered in different suits.

CHANCERY,

Case 104.

7tm455
e114 197
d114 725

June 28.

Bill for set-off against judgment at law.

TRIBBLE
vs.
TAUL.

Set-off in equity allowed only when it appears there is some obstruction to the recovery of the demand at law, or there is an agreement to set off, a connexion between the demands, or other circumstance to give the chancellor jurisdiction.

Necessity of the uniformity and stability of the decisions of this court.

We conceive that the set off ought not to have been allowed, for a defect of jurisdiction in the chancellor. There is no insolvency or absence of Tribble suggested, or any obstruction to the operation of due process of law against him, and the claims of Taul are entirely legal, and not of an equitable character peculiar to a court of equity; nor are they such over which the chancellor can assume jurisdiction concurrent with a court of common law.

There is no connexion between the demands; one does not form the consideration of the other; nor is there any promise or agreement to set off one against the other. In short, we discover no circumstance calculated to draw the claim of Taul under the power of the chancellor. According to the settled law of this court, therefore, the set off ought not to have been allowed.

But a difference of opinion among the members of the court, requires that we should say something farther on the principles which we have recited as regulating courts of equity. If we were convinced that on this point the law was settled wrong originally, we should not feel ourselves at liberty to depart from it; aware, that it is of greater importance to society, that the rule should be uniform and stable, than that it should be the best possible rule that could be adopted. In the supreme court of a state, as this is, possessing, with but few exceptions, appellate judicial power co-extensive with the state, the influence which its decisions must have, is evident. Its mandates are conclusive, and even its dicta are attended to in all the inferior courts. No sooner is a decision published, than it operates as a pattern and standard in all other tribunals, and as a matter of course, all other decisions conform to it. If in this court, a settled course of adjudication is overturned, then the trouble and confusion of reversing former causes succeeds in the inferior tribunals; and even the credit and respect due to this court is shaken, by the phenomenon that A has lost his cause on the same ground that B gains his. And not only do these consequences follow, but some still more serious may ensue. For perhaps no court

may strike the vitals of society with a deeper wound than a capricious departure in this court from one of its established adjudications. We ought, therefore, to be cautious not to leave a course well understood; and nothing but the imperious demands of justice could justify it. Here there is no such demand upon us.

Now, when it is known to us, that for a space of time not much short of twenty years, the principles which we have now recognized have governed all cases of set-off in equity, we should not depart from them now. It has been considered, and is still held as the well settled doctrine of this court, that anterior to the statute of set off, courts of equity never did entertain jurisdiction of set off, except in such cases as the following.

The demands must be connected, or one must form the consideration of the other; or

There must have been an agreement to set off the mutual demands; or,

They must have been demands already completely liquidated and settled at law, such as mutual judgments; or,

There must be some obstacle to the complainant, who strove to set off his claim, proceeding at law, such as nonresidence, insolvency, or the like; or,

The claim must be one over which chancery held either exclusive or concurrent jurisdiction originally.

This being the ground on which the doctrine of set off stood in equity before the statute, it is not changed by the statute; nor is the broad and illimitable rule adopted, that wherever there are mutual claims, of whatever character, there the chancellor will interfere with the case.

That the law was so settled, independent of the statute, is evident by consulting Montague, p. 1, and the language of lord Mansfield in the case of Green vs. Farmer, 1 Black. Rep. 651, in which he says:

"The justice of allowing cross demands is supported by natural equity; the balance only is really

*Margin notes:*

TRIBBLE vs. TAUL.

Cases in which sets off in equity may be allowed.

Statute of set off at law has not enlarged the jurisdiction of courts of equity.

Principle of the common

law against
sets off, before
the statute.

due in such cases. But the common and established forms of law have in general directed separate remedies to be mutually had, by different actions; and though where the nature of the transaction consists in a variety of receipts and payments, the law allows the balance only to be the debt; yet where the mutual debts stand *unconnected* with each other, the law hath said they shall not be set off: *courts of equity have followed this rule merely because it was the law.*"

This we conceive will be found to be the settled rule of equity, after all the English cases are examined; and we conceive it would be difficult to find one adjudicated case of any authority, which adopted a different rule.

Cases of sets
off in equity
cited.

This doctrine has governed this court from its origin, and all the cases, relating to set off in equity will be found to wear the impress of this principle on their face. Hence the court will be found speaking, as in the case of Durrett vs. Kenton, 4 Bibb, 207, in such language as this:

"With respect to a credit claimed by Durrett for a fee bill, which issued from the clerk of the federal district court against him, Simon and John Kenton, and which has been paid by Durrett, it need only be remarked, that as it appears *to have no connexion* with the main subject of contest, and as Durrett has ample remedy therefor, in the ordinary mode of action, we suppose the circuit court properly refused to allow a credit in consequence thereof." So in the case of Pryor vs. Richard's adm'or, 4 Bibb, 357, it is said:

"With respect to part of the former (demands) as they are not even alleged to be in *any manner connected with that upon which the administrator obtained the judgment against Pryor*, they do not, *per se*, form a sufficient cause for applying to a court of equity for relief. But as both parties allege the estate to be insolvent, that, we suppose, furnishes a good reason for the interposition of the chancellor."

Such is the language often used, of which we could give more instances, if we conceived it necessary. The cases do not stop to investigate or prove

the principle; but refer to it as existing, as incontestible, and at rest. We do not therefore feel willing to become empirics in jurisprudence, and to change by one mandate the current of decision, which has long run undisturbed through all the tribunals of the country; and we forbear to enlarge the jurisdiction of the chancellor beyond its settled and undisputed limits.

Indeed, if we were to do so, and to permit every defendant at law, who might have purely legal and unconnected claims against his adversary, to go into equity without any good cause, and there try and liquidate his demands, and there discount them, we might introduce a course of decision, in many cases. questionable on constitutional ground. By changing the form, we might permit such complainant to deprive his adversary of the right of trial by jury, which must remain inviolate. Indeed, in this case itself, we should be on the boundary line of such an error. For the demand of Taul is not only legal, but is a *quantum meruit* for his services as counsel, without any stipulated price, which is peculiarly proper for the liquidation of a jury.

The decree of the court below, the Chief Justice dissenting, must therefore be reversed, with costs; and the cause be remanded, with directions to dissolve the injunction, and dismiss the bill with damages and costs.

*Dissent of Chief Justice* BIBB, *on the question of set off in equity.*

THE circuit court has decreed a perpetual injunction against a judgment at law, obtained by Tribble in the name of Jones' administrator. The administrator of Jones confesses he has no interest in the judgment against Taul, that the note was passed to Tribble without assignment. Tribble acknowledges that he did obtain the judgment in the name of Jones' administrator, but for his own use and benefit; he admits that he did refuse to discount this note out of the account exhibited against him by the bill. The proof sufficiently establishes an account due the complainant, for services as his

---

*Margin notes:*

TRIBBLE
vs.
TAUL.

Query of the constitutional power of this court to depart from the adjudged cases, and enlarge the equity jurisdiction.

Dissent of ch. jus. BIBB.

attorney and counsellor at law, to an amount exceeding the judgment at law.

According to my understanding of the principles of equity, this is a plain case for the interference of a court of equity. These cross demands could not have been set-off in the suit at law; because the suit was in the name of Jones' executor, and Taul's demand is against Tribble, who is the equitable assignee.

But even if those demands might have been set-off at law, yet as Taul did not attempt such defence at law, the jurisdiction of a court of equity does embrace the case, in my opinion.

Payment and set-off I consider as subjects of equitable jurisdiction. When there are opposite demands between two persons, and the accounts are connected, by originating in the same transaction, or by subsequent agreement, the balance is the debt, and is the sum recoverable by suit. When the accounts are unconnected, by originating and continuing in distinct transactions, each demand is a legal debt, and recoverable by separate actions; but such accounts may be balanced by setting-off one debt against the other, either in law or in equity. (Montague on Set-off p. 1.)

"The law relating to the balancing of unconnected accounts is called the law of set-off." (Montague p. 2.)

There are three cases of set-off; at common law, by statute, and in equity.

Set-off in equity prevailed long before the statute (ex parte, Blagden, 19 Vez. 467. Hughes vs. McCoun's administrator, 3 Bibb, 255.) The statute which allows set-off at law of mutual debts, does not take away the equitable jurisdiction of the court of chancery, even in cases which are cognizable at law. Courts of law and courts of equity have concurrent jurisdiction in some cases of set-off; courts of equity have jurisdiction of some cases which are not cognizable at law; and courts of equity in the cases of set-off cognizable at law, will ex-

ercise jurisdiction, unless there has been a trial of the matter of set-off in the court of law. So said the judges of this court, in the case of Hughes vs. McConnel, 1 Bibb, 256.

At law, if the demands have connexion by originating in the same transaction, or by subsequent agreement of the parties, then the balance only is the debt recoverable at law. The plaintiff at law would be non suited, if upon such balancing of the cross demands he was in arrear, or if nothing remained due him such cases of connected transactions needed not the aid of the statute, they were to be set-off at common law. Dale vs. Sollett, 4 Burr. 2133. Green vs. Farmer, 4 Burr. 2221.

But if the cross demands have no connexion in their origin, nor by subsequent agreement, yet they may be set-off at law by force of the statutes; if mutually existing debits and credits between plaintiff and defendant, that is sufficient. Thus, a debt by simple contract may be set-off against a debt by specialty. Bull. N. p. 179; Brown vs. Holyoak; and many cases since.

At law, connexion between the cross demands or the want of it, was an important consideration before the statutes of set-off. Since the statute, such connexion is unnecessary except so far as it may involve the question whether a plea or notice of set-off is or is not necessary to let in the defence. Such is the doctrine of the courts of law, before and since the statutes.

The rule of set-off in equity, so far from being narrowed, is far more comprehensive, and embraces cases which cannot be properly allowed, either at common law or by the statutes of set-off. There are no prohibitions in the statutes of set-off against the exercise of the jurisdiction of the courts of equity.

In the case of Collins vs. Collins, (2 Burr. 825-6,) the question was, whether a set-off was pleadable to a bond with condition to an annuity of £10 per year for life, and likewise to maintain the plaintiff in meat, drink, washing and lodging. Lord Mans-

field in delivering the opinion of the court, says, in speaking of the statutes of set-off, "Since these two very beneficial acts, stoppage, or setting-off mutual debts, is become equivalent to actual payment; and a balance shall be struck, as in equity and justice it ought to be."

"At common law, before these acts, if the plaintiff was as much, or even more, indebted to the defendant than the defendant was indebted to him, yet the defendant had no method to strike a balance; he could only go into a court of equity for doing what is most clearly just and right to be done."

"The statute, 2 Geo. 2 c. 22, was made to answer this just and reasonable end, and enacts generally, that where there are mutual debts between the parties, one debt may be set-off against the other." The statute of 8 Geo. 2 c. 24, was enacted to obviate doubts which had arisen upon the former statute, as to the different nature of the debts: *Collins vs. Collins*, 2 Burr. p. 825-6.

Again, in Green vs. Farmer, *(4 Burr. 2220,)* Lord Mansfield, speaking of the statutes of set-off, and the progressive statutory remedies enacted to cure the defects in the administration of justice in the courts of common law, uses these emphatic expressions: "Natural equity says, *that cross demands* should compensate each other, by deducting the lesser sum from the greater, and that the difference is the only sum which can be justly due. But positive law, for the sake of the forms of proceeding and convenience of trial, had said that each must sue and recover separately, in separate actions." He then notices the progressive enactions produced by cases in which "the natural sense of mankind was shocked" at this rule of law, which forbade mutual debts unconnected to be set-off, and drove each party to his separate action.

To my mind it is very clear, that the statutes of set-off were made to remedy this defect of justice in the courts of common law, which drove men to separate actions upon their cross demands; and sent them into courts of equity to get that balancing of

cross demands which natural equity and the good sense of mankind says is just and right. The statutes did not create the equity; that pre-existed; the statutes of set-off did but follow the course of equity. The statutes of set-off followed in the wake of the courts of equity, like the statutes for relief against the penalties of bonds, and covenants, and for allowing pleas of payment of the condition, after the day. It is very clear, that in cases of which the courts of equity and courts of law have concurrent cognizance, a mere neglect to defend at law does not oust the court of chancery of its jurisdiction; there must have been a defence at law upon the same matters, to bar the relief in equity. So the investiture of jurisdiction in the courts of law, by statutory enactions, of cases formerly cognizable in equity, does not divest the courts of equity of their former jurisdiction, unless there are prohibitory words in the statute; the consequences, as I think, of the statutes of set-off, are that courts of equity and courts of law, have concurrent jurisdiction of those subjects.

The difference of opinion between my associates and myself, in this case, consists in this; by their opinion, because no insolvency of Tribble is suggested, because there is no connexion between these cross demands, the one not being the consideration of the other, and there being no promise or agreement to set-off the one against the other; therefore it is inferred, that the demand and complaint of the complainant, Taul, is entirely legal, not of an equitable character, and the cognizance of the court of equity is therefore denied. I agree that there is no connexion of these cross demands, in their origin, or by agreement to set-off; and that there is no insolvency suggested; but yet I consider the absence of such ingredients as no objection to the cognizance of a court of equity. It is enough for me, that the defendant, Tribble, has not barred this application to the court of equity, by shewing that the claim was litigated at law. I go upon the broad and general proposition, that the set-off and balancing of the demands as claimed by the bill, is a subject properly of and belonging to equity. The fact that these demands were unconnected, either in their or-

*Margin:* TRIBBLE vs. TAUL.

Dissent of ch. jus. BIBB.

igin, or by agreement of the parties, proves nothing more than that they could not have been set-off at law, before the statutes of set-off. The fact that they are so unconnected, shews them to be within the reason and policy of the statutes of set-off: that they are subjects of equity, and equitable jurisdiction, according to the doctrine in the cases of Collins vs. Collins, 2 Burr. 825–6; Green vs. Farmer, 4 Burr. 2220; Barker vs. Braham, 2 Wm. Black. 869; s. c. 3 Wils. 396; James vs. Kynnier, 5 Vez. 110; Lanesborough vs. Jones, 1 Pr. Wms. 325; ex parte Ockenden 1 Atk. 235; ex parte Quintin 3 Vez. 248. Payne vs. Loudon, 1 Bibb 512.

I think that set-off, is properly a subject of equitable jurisdiction, founded in natural equity and justice, and that the statutes of set-off have only divided the jurisdiction of some of the cases of mutual credits and debits, between the courts of law and courts of equity, and that there is moreover a class of cases to which the statutes of set-off do not extend—but which are nevertheless cognizable in equity, and that this case is one of peculiar and exclusive cognizance in equity.

In Barker vs. Braham, 2 Black. 869, De Grey, chief justice, said, "the common law was very narrow in its principles, with respect to stoppage or set offs; very different from the Roman law of compensation, which proceeded on a more liberal plan. This our courts of equity adopted, made just allowances to each side, and struck the balance: Jeffs and Wood, 2 Wms. 128. But there was not any legal interposition of this kind, till the bankrupt laws, 4 and 5 Ann; and 5 Geo. I. and 5 Geo. II. The statute of Geo. II. allowed set off to be pleaded, or given in evidence, at the trial. In the construction of this statute, lord Hardwicke, chief justice, differed from Eyre, chief justice, with regard to setting off debts of superior nature against inferior; and vice versa. This occasioned the statute, 8 Geo. II. The courts have gone a little further than the letter of the statutes, by the rule of analogy, in cases within their power. Costs have been set off against costs; and in Barnes and Crofter, the court allowed costs to be

set-off against debt and costs. The present case goes a step farther; it is an application to us to restrain and narrow our own process of execution, by the same equitable rule. Doubtless this judgment in the King's bench might have been pleaded or given in evidence. But that is no reason why we should not allow it now; and no mischief can follow from allowing it." Blackstone, justice, concurred; and said, "The courts have been gradually extending this equitable remedy. In the out set of a suit, they compel the plaintiff to make a set-off in the affidavit to hold to bail, and will not let him swear to one side only of the account. So in costs at the close of the suit, the same reason and the same analogy extend to set-off mutual judgments, and thereby narrow the greater execution, in whatever court it happens to be." Gould and Nares concurred; and so the court of common pleas, upon motion, set-off the judgment of the court of King's bench, against their own judgment; and having deducted it, stayed the execution upon payment of the balance due.

In this court, mutual judgments for costs have been repeatedly set-off, upon motion.

In whatever shape this question of set-off, and balancing mutual demands, has been presented, whether in cases of connected demands or of unconnected demands, before the statutes of set-off and since, in cases on trial, or to set-off judgment against judgment, courts of law and courts of equity have concurred in acknowledging that, striking a balance, and restraining the process of law from going for the collection of more than the balance due, is according to a principle of natural equity sanctioned and approved by the universal sense of mankind.

If the plaintiff sues for a debt due by simple contract, and makes an affidavit to hold to bail, by swearing to one side of the account, omitting the set off, the courts would consider it an evasion, which would not save the party making it, either from losing the security of bail, or from criminal prosecution. Barclay vs. Hunt, 4 Burr. 1996; Barker vs. Braham, 2 Wm. Black. 869.

If he sues upon a note when he is indebted to the

TRIBBLE
vs.
TAUL.

Dissent of ch. jus. BIBB.

TRIBBLE
vs.
TAUL.

Dissent of
ch. jus. BIBB.

defendant in an equal or larger sum, he may be non-
suited by the set-off; Baskerville vs. Brown, 2 Burr.
1230.   After mutual judgments, the court will, on
motion, deduct the smaller judgment from the lar-
ger.   And courts of equity before and since the sta-
tutes of set-off, have again and again interfered to
effect this just and equitable result, of balancing
cross demands by setting off the one against the
other.

In James vs. Kennyer &c. 5 Vez. 110, the application
was to set-off a note held by James, against his bond
to the Mures, then held by the defendants, as assign-
ees of the Bankrupts.   The Lord chancellor stop-
ped the argument for the complainant.   He said,
"is there any doubt; that where there are upon ac-
count mutual credits between two parties, though
they cannot set-off at law, yet it is the common
ground of a bill?   If James had brought an action
upon the note against Mure, supposing no bankrupt-
cy had taken place, I should have stopped that ac-
tion while he was debtor on the bond.   When there
comes a case of bankruptcy it is much stronger.
They might sue Beckford's executors, (who was a
co-obligor with James to whom the note was due,)
but I should stop the action."   The counsel for de-
fendants argued, that the debts were not mutual;
that the bond was due from Beckford and Keighly;
for that James had been virtually discharged by the
transactions, and that James was a stranger coming
in to set-off his note.   The chancellor declared he
had not a particle of doubt.   He said, "it might
have been matter of consideration whether the bill
should be filed by Keighly or James," but that giv-
ing up the bond would put an end to the suit com-
pletely, and it was accordingly so decreed.

There are cases in which complainants' coming in-
to equity, for set-off, ought to state special circum-
stances to induce the chancellor to act; as if the
complainant comes in upon an unliquidated demand,
and such as cannot be liquidated without the inter-
vention of a jury: as in Rowzee vs. Gregg, Litt.
Sel. Cas. 488; Robinson vs. Gilbreth, 4 Bibb, 184.
But this case cannot be dismissed on that ground.

If it were necessary to state any special circum- stances to induce the court of equity to retain the cause, I think the bill and the answer contain allegations and admissions of a sufficiency. Tribble being indebted to Taul, bought a note on him of less amount than what he owed Taul. Tribble does not take an assignment of the note; but in the name of Jones' administrator, who is trustee for Tribble, the suit is instituted and conducted by Tribble, the equitable owner: Taul could not have had his set-off at law, if he had attempted it. And if he had sued Tribble and obtained his judgment, even then he could not have had the set-off of one judgment against the other, because the judgment against Taul was in the name of Jones' administrator; moreover, Tribble, when applied to, refused to set-off and strike the balance. What more can the chancellor want? Taking set-off by statute, as equivalent to actual payment, (as Lord Mansfield said in Collins vs. Collins,) yet Taul was prevented from pleading it at law by the act of Tribble in conducting the suit in the name of Jones' administrator. A set-off under the statute need not be connected with the cross demand in its origin, nor by after-agreement of the parties. And if it could not have been set-off at law, yet it is a good equitable set-off. A court of equity will grant relief in any case where there is an equitable, without a legal right, to set-off. (Montague on set-off, Book 2, p. 61.)

Payments, and set-off, are, in my opinion, subjects of equitable jurisdiction. If one has received a payment, it is fraudulent to withhold the credit, and attempt to coerce payment a second time. So to refuse obstinately to set-off a cross demand which is just, and attempt to coerce the whole without abatement, is unconscientious and oppressive, in violation of good faith and fair dealing. In either case, the chancellor ought to interpose, and prevent the contemplated injury. Whether the payment be of a part or of the whole, whether made before, at, or after the day, cannot affect the question of jurisdiction; so, whether the set-off is as to a part or the whole. These affect only the quantum of injury intended by the prosecution of the demand by legal

process. If the payment or set-off goes to a part of the judgment at law, it is unconscientious to withhold that part and prosecute for the whole; the chancellor is bound by the principles of equity to grant the aid of his jurisdiction to act upon the conscience of such wrong doer, and prevent the wrong. Nor can I perceive how the fact that the payment or set-off has extinguished the whole sum demanded at law, can divest the court of equity of its jurisdiction, or lessen its duty to act upon the offender. The aggravation of the offence, and the increased injury which it is intended to produce, can neither purify the conscience of the offender, nor disarm the chancellor of his powers.

The grievance inflicted by withholding the set-off and coercing payment of the demand is irreparable. Suppose A to owe B £1100 by specialty, but will not pay; purchases B's note for £1000; takes no assignment, sues B, refuses the set-off, and because the suit is not in A's name, B cannot plead his set off at law, A thus coerces the money by execution. B must pay to the sheriff £27 10s. for commissions; A is not responsible to B for this sum. Moreover, in a country like this, where property is not convertible into money, but at great sacrifice, and where the estate is sold under execution without appraisement, the defendant in execution is liable to sustain still greater loss. The solvency of A, will not remunerate B's losses. B pays his debt to A with loss, not compensated by the amount which he recovers by his cross demand. The solvency or insolvency of A does not properly belong to the question of jurisdiction, but merely to the quantum of value involved in the contest.

It seems to me, that the jurisdiction of courts of equity in cases of set-off, is well established, and very properly so established; that the denial of it is calculated to encourage obstinate, vexatious, and litigious spirits, and to produce multiplied litigation, and a failure of justice.

My opinion is that the decree be affirmed.

*Monroe* for plaintiff; *Hanson* for defendant.