## Cox, et al. v. Gaulbert's Trustee.

### (Decided May 16, 1912.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, First Division).

1.  Corporations—Cash Dividend—When Income Belonging to Life Tenant.—A dividend by a corporation out of the earnings or profits, which may be taken in cash or applied in payment of the increase of stock to which the stockholder is entitled to subscribe, is a cash dividend, to be treated, so far as it represents profits accumulated after the creation of the trust for a life tenant and remainderman, as income belonging to the life tenant, and not to the remainderman.

2.  Same.—A dividend of stock representing profits accumulated since the creation of a trust of stock for a life tenant and remainderman, will go to the life tenant, and not to the remainderman.

3.  Same—Merger of Banks—Dividends Going to Life Tenant.—That a cash dividend declared out of the earnings or profits on bank stock amounting to a large percentage of the par value of the stock, is made as an incident of a merger of the bank with another, and for the purpose of adjusting the assets of the two institutions that a merger may be accomplished, does not take it out of the rule that cash dividends are to be regarded as income going to the life tenant, where the capital and required surplus of the bank remain unimpaired.

JAMES S. PIRTLE for appellant.

EDMUND F. TRABUE, JOHN C. DOOLAN for appellees.

Opinion of the Court by Judge Settle—Affirming.

George Gaulbert, of the city of Louisville, died March 26, 1908, leaving a large estate, which he disposed of by will. He was survived by his wife, and a daughter, Carrie Gaulbert Cox, wife of Attilla Cox, Jr. The widow renounced the provisions of the will and took under the statute her share of the estate. The will appointed the testator's brother, J. W. Gaulbert, and the Columbia Trust Company executors, and, after providing for the payment of certain legacies, devised the testator's entire estate to them in trust for certain purposes fully indicated in the will. J. W. Gaulbert died before the testator, consequently the Columbia Trust Company alone qualified as executor, and trustee of the estate devised.

The duties and powers of the appellee, Columbia Trust Company, with respect to the trusts created by the will, are defined by that instrument as follows:

"First: To pay monthly the net income from one-half of said trust estate as and when it shall have been received to my daughter, Carrie R. Gaulbert, until her death, or until a court of competent jurisdiction shall by judgment or decree hold that her interest in said income, not already accrued and payable to her as aforesaid, is liable to be anticipated, assigned, sold or encumbered by her, or is liable to be subjected to her debts, and upon her death, or the rendition of such judgment or decree, whichever first happens, said one-half of said trust estate * * * and the income therefrom shall pass as follows: to-wit:

"Said net income shall be paid monthly to the child or children of my said daughter, should she have any (and such of their descendants per stirpes as may be born within her life time), until the youngest of such children shall become twenty-one years of age, and then the principal of such one-half of said trust estate (subject to said prior charges) shall vest in such child or children and their said descendants in fee per stirpes. During default of such issue of my said daughter said income shall be paid monthly to my wife for life, and at her death the principal of said one-half of said trust estate shall pass in fee to my brother, sisters, nephews and nieces and the descendants of any of them who may be then dead to take their share or shares per stirpes.

"Second: To pay monthly the net income from the other half of the trust estate as and when it shall be re-

ceived to my wife, Hattie R. Gaulbert, during her life, and after her death to my daughter, Carrie, during her life, remainder of the last mentioned half of said trust estate to said children of my said daughter and their said descendants as hereinbefore provided as to the first mentioned half thereof, and in default of such issue surviving my said daughter, then remainder of said second half of said trust estate in fee to my brothers, sisters, nephews and nieces, the descendants of any of them who may be dead to take their share or shares per stirpes.''

Carrie Gaulbert Cox, and her husband, Attilla Cox, Jr., have but one child, the appellant, Harriet R. Cox, who is ten years of age. When the widow of the testator elected to renounce the will and by reason thereof received her distributive share of the testator's estate, the life interest of Carrie Cox, under the provisions of the will, vested in the entire trust estate, with remainder to her infant daughter, the appellant, Harriet R. Cox. In other words, Mrs. Cox, as the life tenant, is the beneficiary of the net income arising from the trust estate, as it accrues, until her death, to be paid to her monthly; the remainder of the estate in fee to go to the appellant, Harriet R. Cox, subject to be divested as provided in second and third paragraphs of the will above quoted.

Following a previous settlement of its accounts as executor of the will, the appellee, Columbia Trust Co., made, for the year ending March 31, 1909, a settlement in this action of its accounts as trustee thereunder. In this settlement it was charged and credited with a dividend on thirty-six shares of the capital stock of the Kentucky Title Saving Bank & Trust Co., which it had collected and paid to the life tenant, Mrs. Cox; the dividend being 66 2-3 per cent of the par value of the stock, amounting to $2,400, and payable in cash.

An exception was filed to this item of the settlement by the guardian ad litem of the infant appellant, Harriet R. Cox, upon the ground that the dividend in question was not income, but a part of the principal of the trust estate, for which reason it should not have been paid to Mrs. Cox. The exception was overruled by the circuit court, and by the judgment entered, the payment of the dividend to the life tenant was approved. From that judgment the guardian ad litem has appealed.

It is contended by the guardian ad litem:

First: That the dividend of 66 2-3 per cent, made by the Kentucky Title Savings Bank & Trust Company,

and the increase of the capital stock thereof $100,000, were parts of a scheme to consolidate that institution with the First National Bank of Louisville.

Second: That the dividend, though called in the notice thereof, a cash dividend, was not intended or understood to be payable in cash, but in the new stock at par, for which the stockholders were to be permitted to subscribe pro rata.

Third: That the plan of consolidation provided that the stock of the Kentucky Title Savings Bank & Trust Company should be increased $100,000, so that the capatal stock should be $250,000, or, in amount, one-half of that of the First National Bank, without reducing the Kentucky Title Savings Bank & Trust Company's assets; that the latter bank having acquired more than a majority of the stock of the First National Bank controlled it; the plan, as eventually worked out, being that each stockholder, in the Kentucky Title Savings Bank & Trust Company, exchanged his stock in that institution for an equal value of the stock of the First National Bank, and the ownership of stock in the First National Bank carries with it a like proportion of ownership of the stock in the Kentucky Title Savings Bank & Trust Company.

Fourth: That the sole object of this transaction was the consolidation of these banks with all their assets, and that the dividend declared by the Kentucky Title Savings Bank & Trust Company, was but a factor in the unification and not, in reality, income of the trust estate.

Our analysis of the transactions in question and their several parts has failed to lead us to the conclusions expressed by the guardian ad litem in his several contentions. We gather from the record before us that included in the trust estate in the hands of appellee Columbia Trust Company, were thirty-six shares of the stock of the Kentucky Title Savings Bank & Trust Company and that in the year 1909 the Kentucky Title Savings Bank & Trust Co., by its board of directors, declared a dividend of 66 2-3 per cent upon its stock out of earnings, payable in cash to the stockholders. At, or about the same time, the stockholders of the bank held a meeting at which they determined to increase its capital stock $100,000, thereby making the capital stock $250,000. The amount of the increase determined upon equaled the amount of dividend which was declared in cash out of the earnings; and after thus increasing its capital

stock to $250,000, the Kentucky Title Savings Bank & Trust Co. had a surplus of $50,000. Following the action of the board of directors in declaring the dividend of 66 2-3 per cent and that of the stockholders in increasing the capital stock to $250,000, the latter determined to merge, through the "community of interest plan," the Kentucky Title Savings Bank & Trust Co. with the First National Bank. By this plan each stockholder in the Kentucky Title Savings Bank & Trust Co. exchanged his or her stock therein for an equal value of stock in the First National Bank, and the ownership of stock in the First National Bank carried with it a like proportionate ownership of stock in the Kentucky Title Savings Bank & Trust Co.

When the dividend of 66 2-3 per cent was declared by the board of directors of the Kentucky Title Savings Bank & Trust Co. the stockholders were notified that they were entitled to be paid the amount of the dividend in cash and, that if desired, it would be so paid them, but were advised to receive the same in the new or additional stock at its par value. The appellee, Columbia Trust Company, as trustee under the will of George Gaulbert, being the owner of thirty-six shares of the stock of the Kentucky Title Savings Bank & Trust Company, the dividend payable on this stock, which was $2,400, would have paid for twenty-four shares of the new stock. But had this dividend been a part of the principal of the trust estate, the trustee had no power to take its value in the new stock, because the will directed the investment of the trust funds in approved real estate and in certain specified classes of securities. Bank stock was not in the list of the investments permitted to the trustee by the will. Moreover, the ownership of bank stock carries with it a double liability, and the trustee would not have been willing to have assumed this double liability in the face of the provisions of the will respecting investments; therefore it declined, as trustee, to take the amount of the dividend upon its thirty-six shares of stock in the new stock issued by the bank, and its refusal to do so was entirely independent of the question as to whether the dividend of $2,400 belonged to the income or the capital of the estate.

In this situation the trustee, being of the opinion and so advised by its counsel, that the dividend of $2,400 coming to it as trustee on the thirty-six shares of stock, payable in cash, was income of the trust estate and be-

longed to the life tenant, Mrs. Cox, would have received and paid it to her in cash, but for her request that it be invested for her in the new stock and, with which request it complied, acting in the matter as her agent and allowing her to use its name for the purpose of making her subscription to the new stock; she as principal indemnifying it, as her agent in the transaction, against any loss or liability that might result to it from the use of its name in connection with the subscription to the new stock. The depositions of Messrs. Botts. and Render, president and treasurer, respectively, of the Columbia Trust Co. fully establish the foregoing facts as well as the necessity of using the trustee's name instead of that of Mrs. Cox. Mrs. Cox was not an old stockholder and the trustee was, and, as the option to subscribe for the new stock at par, was an option given only to the old stockholders, the trustee, in performance of its duty to Mrs. Cox, merely assisted her in procuring from the Kentucky Title Savings Bank & Trust Company that which she was authorized to claim, but might otherwise have had some difficulty in obtaining.

Had the trustee, instead of taking the dividend of $2,400 in the new stock, at the request of Mrs. Cox and as her agent, simply collected the same in cash, as it was informed by the notice from the Kentucky Title Savings Bank & Trust Company it was entitled to do, and then paid it over to Mrs. Cox, it seems to us no doubt could have arisen as to its right to thus dispose of it. The $2,400 dividend was unquestionably income or profit on the thirty-six shares of stock held by the trustee under the will and must be treated as having accrued when the dividend was declared, and in our opinion the right of Mrs. Cox to this' dividend of $2,400 became fixed as of the date the trustee was entitled to have received it from the Kentucky Title Savings Bank & Trust Company.

The argument of the guardian ad litem that the dividend was not declared out of the earnings of the bank, is without support from the record; on the contrary the circular announcing to the stockholders the declaration of the dividend of 66 2-3 per cent not only advised them that it was payable in cash, but also stated that the corporation had $100,000 of assets, in the form of earnings and accumulations, to pay the dividend, and that after paying the dividend would have left a surplus fund of $50,000, in addition to its unimpaired original capital

stock of $150,000. These facts were also shown by the affidavit of the president of the Kentucky Title Savings Bank & Trust Company, and were uncontradicted. Moreover, as section 596, Kentucky Statutes, forbids the payment of dividends, except out of earnings, it is not to be presumed that the board of directors would have declared a dividend without having on hand the earnings out of which to pay it.

We find little force in the argument of the guardian ad litem that the fact, that all the stockholders of the Kentucky Title Savings Bank & Trust Company took their proportionate shares of the new stock and paid for it with what was due them of the 66 2-3 per cent dividends, makes it evident it was not intended by the board of directors of the bank that the dividend should be paid in cash. In our opinion, the fact that the stockholders did so apply the dividend, demonstrates the good faith of the transaction; for unless the bank had on hand, as represented, the assets from its earnings to make the original stock worth the amount of the dividend plus the original stock at par, it is impossible of belief that the stockholders, familiar as they manifestly were with all the facts, would have been willing to take the dividend in new stock and thereby assume the risk of double liability imposed by the statute. The opportunity to the stockholders to receive the dividend in cash was not lacking, for the circular, giving notice that the dividend had been declared, warned each stockholder that in order to share in the new issue of stock to the amount of the dividend due him, he must subscribe therefor by September 18, 1909, or accept his dividend in cash. It is patent, therefore, that the stockholders were not compelled to receive the dividend declared in new stock; they had the option to receive it in the new stock or in cash.

We are unable to see that the declaration of the dividend by the directors of the Kentucky Title Savings Bank & Trust Company, the voting of the new stock by its stockholders and the adoption of the plan of merger by the stockholders of that bank and the First National Bank were, as claimed by the guardian ad litem, so connected as to make one transaction and constitute a conversion of the trustee's stock in and dividend from the first named bank, into stock in the merged banks. This cannot be true for the dividend being payable in cash the stockholder could have disregarded the privilege

given him to apply it to the purchase of the new stock, and take it in cash to be applied to any use he saw proper.

Obviously the two banks could have been merged without the dividend and without new stock. As the Kentucky Title Savings Bank & Trust Company did not become richer or poorer by paying out the $100,000 of its assets to its stockholders in dividends and getting in a like sum from them for the new stock issued, it was in no better position to merge with the other bank after that was done than before it was done. In other words, the merger could have been effected as readily when the Kentucky Title Savings Bank & Trust Company had a capital stock of $150,000 with a surplus of $150,000, or total assets of $300,000, as by increasing its capital stock to $250,000 with a surplus of $50,000, making the total assets $300,000, as before. In neither case would the assets of the Kentucky Title Savings Bank & Trust Company be affected, nor the merger aided or prevented.

In Hite v. Hite, 93 Ky., 257, a case involving the right of a life tenant to a dividend on the stock of a corporation held in trust, this court announced what is known as the "New York and Kentucky Rule," which seems to have been applied in this class of cases by the courts of last resort in many of the States. That is, that dividends, whether of stock or payable in money, are non-apportionable, and must be considered as accruing in their entirety as of the date when they are declared. Therefore, when the stock is devised to one person for life, remainder to others, if a dividend is declared after the life tenancy has begun the whole of it belongs to the life tenant, although a portion of it may have been earned before the death of the testator. So if a dividend declared by a corporation be, in fact, a profit, it should, although declared in stock, be held to be income, and therefore is not to be treated as a part of the capital, but paid to the life tenant. The opinion declares, however, that this rule should not be held to embrace a dividend which was not declared out of earnings; hence it was held therein that a dividend from profits, realized by the sale of a piece of real estate, which the corporation owned at the testator's death, should be treated as capital and not income, and, therefore, could not go to the life tenant.

Under the application of the foregoing rule it is not

material whether the dividend in the instant case be regarded as a stock dividend, or a dividend in cash convertible into stock. Had it been declared in stock, it would have belonged to the life tenant; being declared in cash it was undoubtedly hers. In other words, if she was entitled to the dividend, its proceeds, whatever form they may have taken, continued hers.

In Chin v. Courtney, 13 R., 422, the Superior Court applied the rule of the Hite case in the matter of the division between the life tenant and the remainderman, of the dividend declared by the Bank of Kentucky, after the former's death, out of earnings accruing during her lifetime.

In Holbrook v. Holbrook, 12 L. R. A. (N. S.), 768, decided by the Supreme Court of New Hampshire, it was held that an extra dividend by a corporation out of profits, which may be taken in cash or applied in payment of an increase of stock to which the stockholder is entitled to subscribe, is a cash dividend, to be treated so far as it represents profits accumulated after the creation of a trust for life tenant and remainderman as income belonging to the life tenant, and not to the remainderman; also that the value of a right to subscribe to additional stock of the corporation, which depends upon earnings since the creation of a trust of its stock for the benefit of a life tenant and remainderman, is income belonging to the life tenant. The case is practically on all fours with the instant case and the opinion contains an able discussion of the question under consideration. In the foot notes are collated and annotated many cases, a majority of which are in line with that of Holbrook v. Holbrook and Hite v. Hite, supra. In one of these cases, Bordman v. Bordman, 78 Conn., 451, also very similar to this case, the Supreme Court of Connecticut applied the Massachusetts rule instead of the "New York and Kentucky Rule," but decided the question before it in favor of the life tenant even under the Massachusetts law. Its application to the instant case will be seen from the following quotation, taken from the syllabus:

"That a cash dividend on bank stock amounting to a large percentage of the par value of the stock, the source of which cannot be traced, is made as an incident to a merger of a bank with another and for the purpose of adjusting the assets of the two institutions that the merger may be accomplished, does not take it out

of the rule that cash dividends are to be regarded as income going to the life tenant for the stock, where the capital and required surplus of the bank remain unimpaired."

As previously stated, the rule in New York is identical with that in Kentucky, as announced in the Hite case, and it is well stated in Re Kernochan, 104 N. Y., 618 (12 L. R. A., 776.)

As originally announced by the Massachusetts courts the rule in that state was that where the dividend was payable in cash it belonged to the life tenant no matter how large it might be and no matter when the earnings were made, out of which it is declared; but that where dividends were payable in stock they belonged to the remainderman without regard to when the earnings accrued, out of which such dividends were declared. It will be found, however, that the later decisions of the Massachusetts courts have somewhat departed from this rule and very nearly adopted that of New York and Kentucky. Thus in Hite v. Holmes, 198 Mass., 287, another case quite like the instant case, it was held that where the corporations declared a cash dividend from earnings and voted an increase of capital stock for a like amount on the same day, giving the stockholders the right to subscribe to the new stock, the cash dividend constituted income and such dividends on stock held in trust subject to life estates, belonged to the life tenants and not to the remainderman.

In so holding the Supreme Court of Massachusetts followed its previous decision in Myman, &c. v. Pratt, &c., 183 Mass., 58, in the opinion in which it is said:

"In the present case the vote of the increase of the capital stock and the vote declaring the dividend took effect on the same day, and the amount of the dividend was just enough to enable each stockholder to pay for the additional stock for which he was entitled to subscribe under the vote of the increase. It was undoubtedly expected that many of the stockholders would invest their dividend in the new stock; but that there was no requirement that they should, and except in reference to time and amount, each transaction had no apparent relation to the other. * * * Every stockholder was entitled to receive his dividend in cash and use it as he chose. There was no duty, legal or moral, to subscribe for the new stock. * * * We think that the arrangement for the increase of the capital had no such connec-

tion with the dividend as to change the character which was impressed upon the dividend by the vote making it payable in cash.''

It was therefore held by the court that the stock dividend involved in that case should go to the life tenant, to the exclusion of the remainderman. (Smith v. Dana, 77 Conn., 543; 69 L. R. A., 76; Quinn v. Safety Deposit & Trust Company of Baltimore, 93 Md., 285, 53 L. R. A., 169.)

The Pennsylvania rule, like the ''New York and Kentucky rule,'' and unlike the Massachusetts rule, disregards the character of the dividend, as to cash or a stock dividend, as the criterion of the rights of the parties, and, unlike both of those rules, inquires as to the time relatively to the inception of the life estate covered by the accumulation of earnings from which the extraordinary dividend, whether stock or cash, was declared; and, if it ascertains that the entire fund accumulated before the inception of the life estate, awards the entire dividend, whether stock or cash, to the corpus; and, if it ascertains that the entire fund accumulated after the inception and during the continuance of the life estate, awards the entire dividend to the income. But if it ascertain that the fund accumulated partly before and partly after the inception of the life estate, undertakes to apportion the dividend, whether stock or cash, between the life estate and the remainderman. (Smith's Estate, 140 Penn. 344; Oliver's Estate, 136 Penn., 43).

In our opinion the evidence in this case indisputably shows that the dividend of 66 2-3 per cent declared by the board of directors of the Kentucky Title Savings Bank & Trust Company, was made out of the earnings of the bank, accrued to that date, and that its payment in cash would not have impaired the capital or surplus of the bank; and while it was doubtless expected by the board of directors of the bank that the dividend thus declared would be taken by the stockholders in the new issue of stock, it was intended that they should be paid in cash, if preferred; and they would have been so paid upon their demand. We are also of the opinion that the $2,400.00 dividend the appellee trustee, Columbia Trust Company, was entitled to receive upon the thirty-six shares of stock belonging to the trust estate, was payable in cash, and being income upon the stock, belonged, under the provisions of George Gaulbert's will, to the

life tenant, Carrie Gaulbert Cox; furthermore, that in applying this dividend to the purchase of the twenty-four shares of the new stock the trustee merely acted at her request and as her agent.

It is likewise our opinion, that the right of Mrs. Cox to the dividend of $2,400.00 was unaffected by the manner of declaring the dividend, the increase of the capital stock of the Kentucky Title Savings Bank & Trust Company, or the merger of that bank with the First National Bank.

We do not understand that the authorities relied on by the guardian ad litem militate against the conclusions we have expressed. On the contrary, one of them, Hite v. Hite, sustains the rule as we have here applied it in behalf of the life tenant, although the dividend involved in that case was not allowed to go to the life tenant because it was not paid out of earnings on the capital stock of the corporation, but from the sale of real estate which it owned at the time of the testator's death. The other cases: First National Bank v. Lee, 23 R. 1897; Letcher v. German Bank, 134 Ky., 24, and Bains v. Gibbons, 136 Ky., 337, are not in point, as they relate to questions arising out of the enhancement of specific trust funds, and in none of them had the corporation, in which the stock was held, declared a dividend.

As the rights of the parties were properly determined by the judgment of the circuit court, the same is affirmed.

Whole court sitting, except Judge Miller.