## Robinson v. Robinson's Executor, et al.

(Decided October 7, 1927.)

### Appeal from Mercer Circuit Court

1. Life Estates.—It is a well-settled rule in Kentucky that, as between a life tenant and remaindermen, all dividends of stock or cash declared out of earnings are payable to the life tenant, whether accruing before or after the inception of the life estate.
2. Life Estates.—Where bank reduced its stock by one-half and created a surplus equivalent to the stock and paid out as dividends surplus previously accumulated, and good faith of directors was not challenged, held life tenant, rather than remaindermen, was entitled to the dividends so paid.

W. R. REASOR and GEORGE B. SHINDLER for appellant.

C. E. RANKIN and R. L. BLACK for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Reversing.

George W. Robinson, a resident of Mercer county, died testate May 20, 1913, the owner of 70 shares of the capital stock of the State Bank & Trust Company of Harrodsburg of the par value of $100 a share. The first

clause of his will, which was duly probated in the Mercer county court, is as follows:

"I give, devise and bequeath to my beloved wife, Belle A. Robinson, absolutely my horse, buggy, cow and one-half of all my household and kitchen furniture. I direct my executor hereinafter named to hold my (70) shares of stock in the state Bank & Trust Co. until the death of my wife, and to pay to her all of the dividends on said stock as it accrues, so long as she lives, said dividends to be absolutely hers. The bank stock is not to be sold so long as she lives. At the death of my said wife, said bank stock shall be sold and converted into money by my executor and distributed as is provided in clause five of the will. I have provided for my said wife certain annuities, and made certain gifts to her heretofore, and what is given to her under this will is in addition thereto. The annuities, gifts and provisions for her in this will, are to be accepted by her as her full interest in my entire estate."

By clause 5 he directed that at the death of his wife the bank stock be sold and converted into cash, and divided among his other heirs in certain proportions.

At the death of the testator the capital stock of the bank was $75,000; the surplus, $10,400; undivided profits, $3,018.92. In September, 1916, the capital stock of the bank was increased to $100,000, the surplus to $20,000, and the undivided profits to $4,877.15. In November, 1925, the directors, feeling that the bank was overcapitalized for the amount of business it was doing, decided to reduce the capital stock so as to make the surplus equal to the capital, and thereby place the bank on the honor roll standard. The proposition was submitted to a vote of the stockholders, and carried without a dissenting vote. Pursuant to the authority thus conferred the capital stock was reduced to $50,000, a surplus of $50,000 was set up, and the sum of $4,006.27 was placed to the undivided profits account. At the same time the $20,000 previously carried as surplus was by proper resolution of the board of directors set aside as a special dividend reserve to be paid in cash as follows: Ten per cent. on January 1, 1926; 10 per cent. on July 1, 1926; 10 per cent. on January 1, 1927; and 10 per cent. on July 1, 1927. The reduction of the capital stock was then carried into effect by exchanging one share of the new stock for two

shares of the old stock. The result is that the trustee now holds 35 shares of stock in a bank with a capital stock of $50,000, surplus of $50,000, and undivided profits of $4,006.27, in lieu of 70 shares of stock in a bank that had at the time of the testator's death a capital stock of $75,000, a surplus of $10,400, and undivided profits of $3,018.72, and that had just prior to the change a capital stock of $100,000, a surplus of $20,000, and undivided profits of $4,877.15.

Being uncertain whether the dividend declared out of the $20,000 surplus was payable to the life tenant or the remaindermen, the State Bank & Trust Company, the executor of the will, brought this suit under the Declaratory Judgment Act (Acts 1922, c. 83) for an adjudication of the rights of the parties. The chancellor adjudged that the 40 per cent. dividend amounting to $1,400 should be invested, and the income therefrom paid to Mrs. Robinson, the life tenant, so long as she lived, and that at her death the principal thereof should pass to the remaindermen. Mrs. Robinson appeals.

It is the well-settled rule in this state that, as between the life tenant and the remaindermen, all dividends of stock or cash declared out of earnings, whether accruing before or after the inception of the life estate, are payable to the life tenants. Hite, et al. v. Hite, et al., 93 Ky. 257, 20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189; Cox v. Gaulbert's Trustee, 148 Ky. 407, 147 S. W. 25; Goff v. Evans, 217 Ky. 664, 290 S. W. 490. It is not claimed that the $20,000 surplus out of which the dividend in question was declared was paid in by the stockholders, or arose from a sale of stock or capital assets, or was accumulated otherwise than out of the earnings of the bank. It was never capitalized by the issuance of stock, or irrevocably made a part of the capital of the bank. Being surplus that arose out of earnings, it was for the directors to say whether it should remain surplus or be distributed as a dividend. It is true that the declaration of the dividend in this instance operated to the disadvantage of the remaindermen; but, as it happens just as often that the declaration of a small dividend out of large earnings operates to the disadvantage of the life tenant, the matter of advantage or disadvantage plays no part in determining the rights of the parties. After all the question is whether it is wiser for the particular corporation to declare small dividends and accumulate a large surplus, or declare larger dividends at the expense of surplus.

This is a question of business policy that addresses itself to the sound discretion of the directors, and so long as they act in good faith, and in conformity with the law, their action is not reviewable by the courts. The good faith of the directors in this instance is not challenged. Their power is unquestioned. They had the right to declare the dividend in question, and, having been declared out of earnings that had never been converted into capital, it is payable to the life tenant. It follows that the judgment of the chancellor is erroneous.

Wherefore the judgment is reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.