## Hubley's Guardian ad litem et al. v. Wolfe et al.

(Decided May 24, 1935.)

WILSON W. WYATT and JOHN MARSHALL, Jr., for appellants.

AL M. MARRET for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal involves the right of the appellee Susan Todd Wolfe, as widow of the deceased Vernon Wolfe and life tenant of his trust estate, to a stock dividend of 654 shares declared and paid to trustee by the Myer-Bridges Company, a corporation, on August 5, 1924, and to certain extraordinary cash dividends declared and paid on the stock to the trustee by the said company in the year 1930.

Vernon Wolfe, the testator and deceased husband of Susan Todd Wolfe, died October 26, 1918, leaving a last will by which all of his estate was willed in trust to the Columbia Trust Company (now the Fidelity & Columbia Trust Company), as trustee.

By the will, all of the testator's property, consisting for the most part, if not entirely, of 218 shares of $100 par value stock of the Myer-Bridges Company, passed to the named trustee, under the specific direction, "to be held, managed, controlled, sold, invested, and reinvested, from time to time as said Trustee may deem proper, and the *net income thereof* to be paid by said Trustee in monthly installments to my wife, Susan Todd Wolfe, during her life." (Italics ours.) At the death of the first life tenant, Susan Todd Wolfe, the will directed that the "income" from the trust should be paid to the testator's four daughters and that upon their death "their shares are to pass, free from the trust, in fee to the children of each of the said daughters."

In August, 1924, the stockholders of the Myer-Bridges Company passed a resolution, pursuant to which followed a resolution of the board of directors, by which a stock dividend of 300 per cent. was declared

payable out of its accumulated surplus and undivided profits. Pursuant to said resolutions, there was issued on said 218 shares of its stock, held by the trustee as the corpus of the said trust estate, 654 shares as a stock dividend, each of the par value of $100. Again, in 1930, the board of directors of the Myer-Bridges Company made two extraordinary distributions of cash dividends to its stockholders, including the trustee. By the minutes of the meetings of the directors at which these dividends were declared, it appears that:

"The treasurer presented a statement of the financial condition of the Company, showing cash and securities readily convertible into cash, in excess of $180,000, not necessary in the business of the company. * * *

"The Directors considered the question of making distribution to the stockholders of a portion of the assets not needed in the business. * * *

"By unanimous vote, the Directors authorized and directed immediate payment of $30.00 a share to the stockholders, and a further payment of $20.00 a share, November 10, 1930, *in partial liquidation of the Company, looking to the ultimate liquidation of the Company.*" (Italics ours.)

By the minutes of a special meeting of the board of directors of the company, held August 12, 1930, it appears that again "the treasurer of the Company reported that the financial condition of the company permitted a further distribution of $25.6422 in cash to the stockholders of the Company on or before November 10, 1930, *out of cash accumulated in the surplus account,* distributing entire balance, as shown by the books of the Company reducing the stock to book-value par ($100.00) One Hundred Dollars, per share." (Italics ours.)

On July 18, 1930, the first of these extraordinary cash dividends, recited as made in partial liquidation of the company, was received by the trustee, amounting to $26,160, being $30 a share on the said 872 shares then held by the trustee after its receipt of stock dividend; and on November 6, 1930, the second of these authorized cash dividends or distributions was received, amounting to $22,360.48, and being $25.6422 per share.

It appears that the trustee had, upon receiving

both the 300 per cent. stock dividend in 1924 and these later extraordinary dividends in the net amount of some $43,000, considered them as constituting a part of the corpus of the trust estate. These cash dividends, recited as paid it in partial liquidation of the said company it regarded as distributions in the nature of a return of capital and accordingly invested them as part of the corpus of the trust estate, paying "the net income" received therefrom to Susan Todd Wolfe as the first life tenant.

However, due to later demands made by Mrs. Wolfe in 1934 that it pay to her the whole amount of these cash dividends it has received and invested, as constituting the "income" directed by the will paid her, the trustee brought this suit under the Declaratory Judgment Act (Civ. Code Prac. sec. 639a-1 et seq.) for advice and a declaration as to its proper allotment of these 1930 alleged liquidating cash distributions and made all parties in interest under the will defendants.

The issues being joined on the question raised by the pleadings, as to whether such 1930 distribution made of extraordinary cash dividends constituted "income" upon the 218 shares of stock held as the corpus of the estate, or was, in having been paid according to the "directors resolution," by way of "making distribution to the stockholders of a portion of the assets not needed in the business," to be allocated to the corpus of the estate as dividends declared "in partial liquidation of the said company and in the nature of return of capital," the lower court by its written opinion rendered in August, 1934, held the same, by reason of its having been declared out of the earnings or surplus account of the company, to be "net income," and as such, under the specific direction of the will, belonged to the life tenant, Susan Todd Wolfe.

Thereafter, the appellee Susan Todd Wolfe, as first life tenant of the estate, on September 4, 1934, her motion, asking that the earlier order of submission be set aside, having been sustained, filed her amended answer, counterclaim, and cross-petition, whereby she sought, and also claimed as "income" belonging to her, the 654 shares of stock in the Myer-Bridges Company, received by the trustee in 1924, in the form of a 300 per cent. stock dividend declared on the 218 shares held

by it as the corpus of the estate, and to which it had been added and so held for some ten years. The cross-defendants to this pleading were the four adult married daughters of the testator and Susan Todd Wolfe, named in the will as successor life tenants of the estate, and the four adult and seven infant grandchildren. The appellant guardian ad litem was so appointed to represent the seven infant grandchildren on the cross-petition.

Upon final submission, the learned chancellor decreed that the 654 shares declared as "a stock dividend" represented no part of the capital assets of the company, but "was paid out of the outstanding surplus and undivided profits on hand at the time of the declaration of said dividend on August 5, 1924 * * *; and that said 654 shares of stock were received by the plaintiff (the trustee), and allocated by it to the corpus of said trust estate, and same should be restored to the life tenant, * * * Susan Todd Wolfe," and that she was entitled thereto "as income on the corpus of the estate of Vernon Wolfe, deceased, and that the cross-defendants (remaindermen) have no right, title or interest therein."

Further it was adjudged that the cash dividends in the amount of some $43,000, declared paid the trustee in 1930, also "were paid in cash out of accumulated surplus and undivided profits on hand which were not necessary for the business of the Myer-Bridges Company, and which were no part of the capital assets of said Company * * * and that said cash dividends were 'income,' and as 'income' under testator's will it belonged to his widow, * * * Susan Todd Wolfe, and same should be restored"; further it adjudged that the life tenant, Susan Todd Wolfe, "is not estopped nor did she waive her right to claim" said stock dividends and cash dividends.

The appellant, complaining of this judgment as resulting in giving to the life tenant almost four-fifths of the trust estate on the alleged specious grounds that it is "income" prosecutes this appeal therefrom, asking a very careful consideration as to what one of the several differing rules of construction shall be here adopted and applied to the term "income" as employed in this will, for the proper determination of the con-

flicting claims of life tenant and remaindermen, as to whether these "stock dividends" and extraordinary cash dividends claimed to have been paid both out of earnings and in "partial liquidation" of the company, shall pass as income to the life tenant or inure to the ultimate benefit of the remaindermen, through being allocated to the corpus of the estate by treating the stock dividend as representing a capitalization of undivided profits in the one case or as a liquidation return of capital assets in the other.

It is to be remembered, in approaching the matter of our proper determination of the relative merit of these several general rules of construction which we are by the appellant urged to apply in defining "income" as here used, to effect a logical and practical adjustment of the conflicting claims of the adversary parties before us, as to the dividends both stock and cash declared out of the earnings and undivided profits of the Myer-Bridges Company, upon the trust stock here involved, that both these rules, so strongly commended for our adoption, and all general rules looking to the construction of the terms employed by a testator in his will, are alike subservient to the one which recognizes the ascertained intention of the testator as controlling. All conflicting court rules must give way to an expressed intention of the testator.

The testator has here directed, in terms chosen and employed by himself to express his intention, that the "net income" derived from the trust estate (consisting chiefly of this 218 shares of stock) is to be paid by his trustee in monthly installments to his wife during her life. Our first inquiry must be: What part of his estate did he intend to describe and define, by these words "net income" which was to be paid to his widow, during her life, from the trust settled on her?

The testator had, prior to his death in 1918, been one of the chief owners and officers of this company, active in its management and control, and must be taken to have at such time well known the then financial condition of the company and the amount of surplus and undivided profits it had earned in their operation of the business. Also, it must be presumed that he knew, too, the well-settled laws of his state and its long-announced policy with respect to its allocation of divi-

dends, whether of stock or payable in moneys, as between life tenants and remaindermen, and that they are treated as nonapportionable and must be considered as accruing in their entirety as of the date when they are declared, even though declared in the form of stock dividends, unless a contrary intention be clearly designated by testator. It is the province of the law to determine whether dividends, whatever their character, belong to the corpus of the estate and are as such to inure to the benefit of the remaindermen, or whether they should, as representing income, go to the life tenant to whom it is given. It is the settled law of this state, where a different intention is not otherwise by the testator designated by the clear meaning of the language of his will and he by it devises "income" to one person for life and the remainder to others, that if a dividend is declared upon the stock constituting the corpus of the trust estate after the life tenancy has begun, the whole of it belongs to the life tenant, although a portion of the surplus profits, out of which declared, may have been earned before the death of the testator, our rule being that if a dividend declared by a corporation be, in fact, a profit, or earnings, it should, although declared in the form of stock, be held to be "income," and therefore is not to be treated as a part of the capital or corpus of the estate, but, as constituting income, should be paid to the life tenant. Had the testator otherwise desired, when directing that the "net income" of his estate be paid to his wife during her life, he might have easily, by some fitting further expression, indicated a different intent in his use of the words, "net income," but having failed to do this, thus leaving the meaning of the words to be that fixed by our rule construing them, a court of equity has no power to do it for him. Men have differed, and perhaps always will, as to what constitutes equity in a division of property among those who are objects of a testator's bounty; but where the language used is plain, and the rules of law in respect thereto are well defined, equity should not interfere.

In the case of Robinson v. Robinson's Executor, 221 Ky. 245, 298 S. W. 701, 702, this court said:

"It is the well-settled rule in this state that, as between the life tenant and the remaindermen, all dividends of stock or cash declared out of earnings,

whether accruing before or after the inception of the life estate, are payable to the life tenants. Hite's [Devisees] v. Hite's [Ex'r], 93 Ky. 257, 20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189 [14 Ky. Law Rep. 385]; Cox v. Gaulbert's Trustee, 148 Ky. 407, 147 S. W. 25; Goff v. Evans, 217 Ky. 664, 290 S. W. 490.''

The stock dividend here declared by the directors of the Myer-Bridges Company upon its stock, it is abundantly shown by the evidence, was directed made and paid as a capitalization of surplus and earnings then on hand, largely in excess of the amount so capitalized. In fact, it is not claimed that the surplus out of which the stock dividend in question was declared was ever paid in by the stockholders or that it arose from the sale of stock or capital assets or was accumulated otherwise than out of the earnings of the company. In such case, under the well-settled rule of this state as announced supra, the stock dividend was to be construed as income and as such was payable to the life tenant under the express direction of the will. Also, the same considerations applied to the 1930 distribution of cash dividends, even if ''extraordinary'' in their character or declared paid ''in partial liquidation'' or in contemplation ''of the ultimate liquidation of the company'' (as was here announced but never carried out); it is enough, for fixing their character ''as income,'' that (as conceded) they were declared paid out of the earnings and surplus of the company, which its directors had never seen fit to capitalize.

The resolution of August 12, 1930, supra, of the directors expressly recites that the financial condition of the company permits the distribution of such dividend ''out of cash accumulated in the surplus account'' and, as such, clearly constitutes the dividend ''income,'' within the rule of construction of this state, providing that all dividends of stock declared out of earnings are payable to the life tenant regardless of whether earned or accruing before or after the inception of the life estate, they being held to be non apportionable.

This question, as to whether dividends, issued either as ''stock dividends'' or as ''extraordinary cash dividends'' against surplus earned by the corporation constitute ''income'' to be delivered to the life tenant

or corpus to be retained for the ultimate benefit of the remaindermen, has given rise to many different rules, with varying modification and much conflict of authority in respect to what is their proper allocation. The English rule is that regular dividends, whether in cash or stock, belong to the life tenant, and extraordinary dividends, whether in cash, stock or property, belong to the remaindermen. Bouch v. Sproule, L. R. 12 App. Cas. 385.

The Pennsylvania rule is that all dividends, whether cash or stock, earned before the creation of the trust, are capital and belong to the remaindermen; and that all dividends of either class earned during the continuation of the life estate are income and belong to the life tenant; and that dividends of either class earned partly before and partly after the creation of the trust will be·apportioned. Earp's Appeal, 28 Pa. 368; Smith's Estate, 140 Pa. 344, 21 A. 438, 23 Am. St. Rep. 237.

What is called the Massachusetts rule is that all cash dividends, whether ordinary or extraordinary, are income and all stock dividends, so called, are capital, without regard to the time when same were earned. Minot v. Paine, 99 Mass. 101, 96 Am. Dec. 705.

However, the rule of this jurisdiction, generally called the "Kentucky rule," is that where extraordinary dividends are declared and paid, whether in cash or stock, during the life interest and represent stock earnings, past or current, as distinguishable from capital, they are to be awarded, in their entirety, to income, without regard to whether they are essentially stock or cash dividends, or whether the earnings were accumulated wholly before or wholly after the commencement of the life interest, or partly before and partly after the commencement of that interest. Gartenlaub v. Union Trust Co., 185 Cal. 375, 197 P. 90, 24 A. L. R. 1, and annotations thereto, supplemented by annotations in 42 A. L. R. 448; 50 A. L. R. 375; 56 A. L. R. 1287; 59 A. L. R. 1532; 72 A. L. R. 981, and 83 A. L. R. 1261.

It is to be remembered, however, as hereinabove remarked, that any and all of these rules of construction announced on this subject may be displaced by a contrary intention of the testator manifested by the instrument by which the life estate is created. Under the operation of the Kentucky rule, as perhaps appears in.

the instant case, there may be occasions when the corpus of the estate is unduly depleted and by reason of which extreme hardship and inequality may be imposed upon the remaindermen; but these yet arise only in such cases where such result may be taken to effect the declared wish of the testator, by reason of his having failed to designate a contrary intention as to the payment or apportionment of the income derived from the stock among the natural objects of his bounty. Much difficulty would be avoided if testators (who are charged with knowledge that such is the established definition of the word "income" under the settled rule of construction of this jurisdiction), when making their wills, would expressly specify what they mean and intend by the word "income" as used by them when directing that it go to the life beneficiaries, as the ultimate criterion of the respective rights of the life tenants and remaindermen thereunder is the testators' intention, which is the controlling consideration in their determination.

Much forceful argument is advanced, stressing the importance of a modification of this rule to the end of conforming it more with that known as the Massachusetts and Pennsylvania rules, with a view to avoiding these hardships arising out of such literal construction of the word "income" as frequently results in a disadvantage to the remaindermen in their rights to the corpus of the estate. But as to this, it may be replied (as stated in the Robinson Case, supra) that as it perhaps happens "just as often that the declaration of a small dividend out of large earnings operates to the disadvantage of the life tenant, the matter of advantage or disadvantage plays no part in determining the rights of the parties." Rather, the depletion of the corpus of the estate, which may result from the application of this, our well-settled construction of the word "income" in relation to such matter, can be avoided by the testator's expressing a contrary intention, serving to limit and qualify such construction of the term, which he is advised that, it being the settled rule of this state, it will receive unless so qualified by him. Furthermore, we are not persuaded that a departure from the rule of our own decisions, under which wills have been drawn and trusts declared, would result in any betterment by way of effecting and carrying out the testator's inten-

tion or greater fairness to the parties whose rights are declared under such instruments.

A rule established for many years should be changed, if at all, by the Legislature, where business and property rights have been conformed to it. Com. v. Louisville Gas Co., 135 Ky. 324, 122 S. W. 164; Miles v. National Bank of Ky., 140 Ky. 376, 131 S. W. 26. The stare decisis doctrine is entitled to great weight and should be adhered to unless the principle established is clearly erroneous—this rule in relation to its effect upon private affairs we have held is but the application of the doctrine of estoppel in court decisions. Oliver Co. v. Louisville Realty Co., 156 Ky. 628, 161 S. W. 570, 51 L. R. A. (N. S.) 293, Ann. Cas. 1915C, 565; Stoll Oil Refining Co. v. State Tax Com., 221 Ky. 29, 296 S. W. 351.

While we wish to here acknowledge our appreciation of the splendid brief of the appellant and the great force and clarity of the argument therein urged for a modification of this our rule, it yet fails to persuade us that this well-settled rule, long announced in our repeated decisions, should be now departed from, and we feel justified in answering thereto with the doctrine of stare decisis, supra, as further expressed in the old maxim, "to stand by precedents, and not disturb settled points," which has for its object the salutary effect of uniformity, certainty, and stability in the law, and which, "stated in simple form and considered in relation to its effect upon private affairs, is really nothing more than the application of the doctrine of estoppel to court decisions." 7 R. C. L. sec. 29, p. 1000.

In view of the fact that where the application of this rule of construction does not serve to effectuate the particular desire and intention of the testator in the disposition of this class of property, he may easily avoid a miscarriage of his intent, through its application, by a few words designating and expressing his wish for a different result from that effected by such construction, it would appear that no unexpected results can be said to follow from our retention of this rule or that any hardships can be visited upon remaindermen to the advantage of the life tenant, or at least none that do not accord with and represent the wish of the testa-

tor, that such character and extent of income should be received from the trust estate given by him to the life tenant.

Therefore, after a very mature consideration of the arguments advanced by the alike able briefs of both counsel for and against our departure from our established rule, we are led to conclude that the same is not to be ether modified or abandoned, either out of considerations of fairness or of a more enlightened and salutary declaration of juridical principles, but that we must suffer our opinion to rest in harmony with our previous decisions, giving to them the stability adhering to them, as made after mature and ample consideration.

Such being our conclusion, it follows that the judgment of the learned chancellor being in harmony with our views as herein expressed, it is affirmed.