## Liberty Nat. Bank & Trust Co. v. Loomis et al.
## Loomis v. Liberty Nat. Bank & Trust Co.
### (two cases).
(Decided Nov. 18, 1938.)

B. F. WASHER for Liberty Nat. Bank & Trust Co., trustee.

R. P. DIETZMAN for Helen C. Loomis, second life tenant and contingent remainderman.

THOMAS A. BALLANTINE for Alice Loomis, first life tenant.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and plaintiff below, Liberty National Bank and Trust Company, conducts a national banking business in the city of Louisville, Kentucky. As such it qualified itself to act as fiduciary of trust funds, such as guardian, administrator, executor, trustee, and other recognized fiduciary capacities.

Arthur Loomis, a citizen of Jefferson County, Kentucky, died testate on January 28, 1935. Among the provisions of his will, which was duly probated, was the creation of a trust fund amounting to $18,000, in which Alice Loomis, the testator's wife, was given a life estate, and upon its termination testator's daughter, Helen Loomis, was given a similar estate, and the remainder,

after the termination of her life estate, was to go to her children if any survived her, but if none, then the trust fund became a part of testator's residuary estate to be distributed according to terms of the will disposing of such residuary. Plaintiff qualified as trustee of that trust and as such filed this declaratory judgment action in the Jefferson circuit court against the two life cestui ques trust to obtain a declaration of the rights of all interested parties, and an ascertainment of its duties as trustee in making distribution of the net income arising from the trust as between the life tenants and the remainder beneficiaries therein—the sole question raised by the pleadings being, What is the net income to be paid the life tenants? There is involved in the answer thereto the further question as to whether or not the trustee should amortize premiums paid for securities owned or acquired by it in the exercise of the authority conferred by the creator of the trust in his will (to sell trust securities and make re-investments) before making distribution of the net income after deducting expenses of the trust?

The widow, as first life tenant, by her pleadings contended that there should be no amortization of any securities obtained either at a premium or at a discount, and that she should be paid all income derived from both classes of securities less expenses of the trust, regardless of the purchase price of the securities from which the income was realized; whilst the daughter, as life tenant in remainder after her mother's first life estate, insists on amortization of premiums paid for securities, but does not insist on amortization of securities purchased at a discount. The trustee makes the same contention as does the daughter, but it further insists that the true and correct rule is to also amortize securities purchased at a discount. However, in its pleadings it states, with reference to the process of amortizing discount purchased securities that "it is impractical to provide accumulations for purposes of a credit to income," and for which reason it has not heretofore done so, nor does it now insist that discount purchased securities should be amortized because of the impractical and difficult process required for that purpose.

It also avers that it has heretofore amortized premiums, or securities purchased at a premium, in the administration of the trust estates of which it is trustee

and which its able counsel insist is the common law rule in the absence of a specific statute. That contention is supported by a majority of courts including federal tribunals. Furthermore, learned counsel for the trustee contends that since the federal tribunals adopt the common law rule as approved by the majority of state courts, his client (trustee) is thereby required to adopt and follow that rule in the administration of trust estates committed to its care, regardless of what may be the rule of the local jurisdiction of the commonwealth of Kentucky in which its business is located. The respective contentions were submitted to the chancellor for determination and he followed the minority rule as approved by this court in the case of Hite's Devisees v. Hite's Executor, 93 Ky. 257, 20 S. W. 778, 14 Ky. Law Rep. 385, 19 L. R. A. 173, 40 Am. St. Rep. 189. From that judgment all parties appeal.

Two questions were determined in the Hite Case— (1) that dividend stock constituted income to which the life tenant was entitled, and (2) that premiums paid by the trustee for trust securities should not be amortized out of the income to the detriment of the life tenant, nor should securities purchased at a discount be amortized, although the latter question does not appear to have been involved in the case, nor is anyone contending for it in the instant case; although, as we have stated, counsel for the trustee insist that the correct rule would require such amortization, but because of impracticabilities in the administration of it, its approval and adoption as the correct rule in this jurisdiction is not insisted on. The notes to that case, as appearing in the publications referred to, supra, deal exclusively with question (1) supra, which was determined therein as above indicated but they do not treat or discuss in any manner question (2) supra, also determined therein, and which latter question is the sole one involved in this case. However, question (2) is quite thoroughly discussed in annotations appearing in 4 A. L. R. beginning on page 1249, 16 A. L. R. beginning on page 527, and 101 A. L. R. beginning on page 7. That publication (A. L. R.) is no doubt accessible to most practitioners, who, if they do not possess it themselves, may have access to it as possessed by other members of the profession in the same locality. For that reason we refrain from citing herein the cases opposing or approving the rule as declared in our domestic Hite Case, supra. It must be admitted,

however, that a majority of courts disagree with rule (2) as approved in the Hite opinion, upon the ground that it is mathematically incorrect and which, for the purposes of this opinion, might be conceded. But such opposing cases fail—as we interpret them—to accord the proper weight, in arriving at the correct conclusion, to two other facts frequently present in the administration of trust estates, and which are—(a) the more or less intricate and scientific character of bookkeeping incident to such amortization, and (b) that many trustees of trust funds are human beings, who are non-experts in such matters, and that the execution of the rule—as declared by the majority of courts requiring amortization of premiums paid for securities—would render the administration of trust estates so complex as to confuse those whom we conclude embrace more than half of such domestic trustees in the administration of their trust. Such practical considerations we conclude should be taken into account and given some consideration in determining the question.

But a far greater reason exists why we should not at this late day depart from the rule as announced in the Hite opinion, and which is that furnished by the doctrine of stare decisis. The principles upon which it rests are twofold—one to preserve the harmony and stability of the law, and the other to make as steadfast as possible judicially declared principles affecting the *rights of property*. Neither of them imposes an imperative requirement against overruling prior erroneous opinions of the same court involving the same question; but the second principle upon which the doctrine rests places upon courts a far greater mandatory requirement to continue to adhere to its prior decisions. See cases cited under the heading of "Stare Decisis" in Caldwell's Kentucky Judicial Dictionary, volumes 3 and 6, and particularly to the cases of Kentland Coal & Coke Company v. Keen, 168 Ky. 836, 183 S. W. 247, L. R. A. 1916D, 924, Sibert v. Garrett, 197 Ky. 17, 246 S. W. 455, and Hubley's Guardian v. Wolfe, 259 Ky. 574, 82 S. W. (2d) 830, 101 A. L. R. 1359. From an examination of the cases and authorities referred to it will be found that in no state of circumstances does the stare decisis rule require courts to continue to adhere to a clearly demonstrated erroneous opinion, although they are much more reluctant to depart from the law as declared in a prior opinion when such declaration affects indi-

vidual *property rights* and commercial transactions whereby such rights are acquired. In the latter case the doctrine will apply to prevent a disturbance of the previously declared principle, unless such previous declaration is wholly without reason to support it, and works clearly manifested injustice, or detrimentally to the public. Such strict adherence to prior opinions, however, is not enjoined by the doctrine so as to prevent the overturning of prior declarations wherein property rights are not involved, or whereby previous commercial transactions would be disturbed.

The annotations supra acknowledge that there exists in the law—and which is approved by the courts—a qualifying rule affecting the determination of each particular case involving the question of amortization, and which is, that the intention of the testator or the creator of the trust, as expressed in the instrument creating it, should govern, regardless of what the true and correct rule would be in the absence of such intention. It will, therefore, be observed in reading those annotations that many cases are therein cited in which such intention of the testator governed the conclusion of the court, and that courts are everready to deduce from the language of the trust creating document the intention of the creator of the trust, and which is then approved. However, there appears to be nothing in the will of Arthur Loomis expressive of any particular intention as relating to the question under consideration. In the late domestic case supra (Hubley's Guardian v. Wolfe, 259 Ky. 574, 82 S. W. (2d) 830, 101 A. L. R. 1359) we were urged to overturn question (1) supra as determined by the opinion in the Hite Case. We reviewed later authorities arising since the determination of that case nearly fifty years ago and came to the conclusion that the question there under consideration was settled by the Hite opinion and which, as so settled, affected property rights and commercial transactions so as to impose the higher mandatory duty upon us enjoined by the stare decisis doctrine. Largely for that reason we declined in the Hubley opinion to disturb, or in any wise modify question (1) as determined by this court in the Hite opinion. In so doing we said [page 835]: "A rule established for many years should be changed, if at all, by the Legislature, where business and property rights have been conformed to it. Commonwealth v. Louisville Gas Company, 135 Ky. 324, 122

S. W. 164; Miles v. National Bank of Kentucky, 140 Ky. 376, 131 S. W. 26. The stare decisis doctrine is entitled to great weight and should be adhered to unless the principle established is clearly erroneous—this rule in relation to its effect upon private affairs we have held is but the application of the doctrine of estoppel in court decisions. Oliver Company v. Louisville Realty Company, 156 Ky. 628, 161 S. W. 570, 51 L. R. A., N. S., 293, Ann. Cas. 1915C, 565; Stoll Oil Refining Company v. State Tax Commission, 221 Ky. 29, 296 S. W. 351.'' However, the judicial ''estoppel'' therein referred to— and also referred to generally in discussing the question—should be considered in the light of the qualifications supra, and not in the sense of an absolute mandatory estoppel.

In the Hubley Case we were strongly urged to overrule question (1) as determined by us in the Hite opinion, but for the reasons stated we declined to do so. The two questions as first determined by us in the Hite Case are closely akin—so much so as to justify the conclusion that they are twins in their relationship to the law. They each affect the proper administration of trust estates, and also the rights of beneficiaries as well as the duties of trustees. No difference has been pointed out whereby either of the questions should be viewed in a different light from the other one, or why the same consideration should not be applied to each. Therefore, our determination in the Hubley Case to not disturb question (1) as settled by the Hite opinion, we regard as controlling in the instant one wherein the same request is made of us with reference to question (2)—likewise settled by the Hite opinion. We regard that conclusion as inevitable unless we should overrule our opinion in the Hubley Case, but we are not convinced that it should be done.

Courts and law writers adhering to the majority rule—i. e., that trustees should amortize premiums paid in the acquisition of trust securities—insist that the amortization is required by both logic and reason, which is also strongly urged before us by learned counsel for the trustee in this case. As we have hereinbefore said, that argument fails to take into consideration practicability, as well as ability of some trustees to follow the rule. But, putting aside those considerations, we are not yet convinced—as we were not at the time of the

rendition of both the Hite and Hubley opinions—that our declarations made in the Hite Case were not as well supported by reason and logic as is the rule followed by the majority of courts. We are impressed with the correctness of a statement incorporated in brief of learned counsel for the remainderman in this case as having been made by an ex-member of this court who for many years has filled the position of trust attorney and officer for one of the largest financial institutions of Louisville. His name is Judge E. S. Clarke, and he is quoted as saying: "Very few securities bought in trust estates are ever held to maturity. Either they are sold or else called, and that in the long run, the proceeds derived from sales or calls about equal the purchase price of securities, and any inequalities are smoothed out by profit made on bonds bought both at a premium and a discount, so that the trust estates, when finally distributed, have not been either increased or diminished by the failure to amortize the bonds bought at a premium or a discount." We regard that statement as very persuasive and as embodying the practical effect of administering trust estates, as between life tenant and remainderman, pursuant to our determination of question (2) made in our Hite opinion.

But it is intimated, if not insisted, that under the common law rule as declared by federal courts—and which U. S. Bank Examiners insist on enforcing—the plaintiff as a national banking institution vested with a permit to act in such fiduciary capacities should and must follow such common law declared rule approving amortization of premiums paid for trust securities, and for which reason—aside from any of the previous ones discussed—the judgment is erroneous and should be reversed. But the trouble with that contention is that the federal statute (subsection (k) of section 248 of title 12 of the U. S. Code, 12 U. S. C. A., sec. 248 (k)) very plainly to our minds requires nationally incorporated institutions acting as fiduciaries to conform their handling of trust estates in their hands to that demanded of similar local institutions acting in similar capacities under the laws of the jurisdictions wherein they are operating. Indeed, one paragraph of the statute says: "Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the grant-

ing to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this chapter." Other sections are equally emphatic in requiring national banks acting as trustees to follow the requirements of the local jurisdiction with reference to the handling of trusts in the hands of locally created corporate trustees, or in the hands of individuals as trustees. The opinion of the Supreme Court of the United States in the case of First National Bank of Bay City v. Grant Fellows, Attorney General of Michigan, 244 U. S. 416, 37 S. Ct. 734, 61 L. Ed. 1233, L. R. A. 1918C, 283, Ann. Cas. 1918D, 1169, as we interpret it, confirms our interpretation of the federal statute supra, in giving permission for banks organized under federal authority to act in fiduciary capacities. Moreover, the comity existing between federal and state courts would seem to require that trustees created by federal statutes should conform to the requirements of the local law in the administration of their trust estates. Furthermore, corporations under federal statutes—though given permission and authority to act as local fiduciaries within the state where they conduct their business—are not compelled to act in a fiduciary capacity, and if they do not wish to administer a trust tendered them or in their charge, in accordance with the locally declared law, they should refrain from accepting the position of fiduciary or of undertaking to further administer the trust. Therefore, we attach no merit to this contention.

Wherefore, for the reasons stated, the judgment in each appeal (which have been consolidated in this court) is affirmed; the whole Court sitting.