## McIntyre v. Commonwealth.

(Decided May 17, 1927.)

### Appeal from Perry Circuit Court.

1. Statutes.—Emergency provision of Acts 1926, c. 54, declaring that, owing to the congested condition of the docket in the Thirty-Third judicial district, an emergency existed, and the act should be effective on its passage and approval by the Governor, thereby providing for no April term of the Perry circuit court, held invalid, in view of Constitution, section 55, where there was no emergency from the congestion of the docket requiring the act to take effect from its approval.

2. Criminal Law.—Judicial notice will be taken of uniform custom of houses of Legislature, existing for 30 years, to spread all acts on journals when passed and to insert in acts themselves reasons for emergency requiring act to take effect on approval, which Constitution, section 55, requires to be set out at length in journal of each house.

3. Statutes.—Acts 1926, c. 54, section 2, declaring act should take effect at once because of emergency, being invalid on its face, in that no emergency was shown, under Constitution, section 55, reading journals of Legislature was not hearing evidence to impeach signatures to act or anything in it.

F. J. EVERSOLE, H. C. EVERSOLE and MORGAN & EVERSOLE for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

Harrison McIntyre, at the April term, 1926, of the Perry circuit court, was indicted for the murder of Jerry Caudill. The case was tried at the same term and he was found guilty of voluntary manslaughter and his punishment was fixed at 21 years' imprisonment. He appeals.

No bill of exceptions was filed and the only question made on the appeal is that he was indicted and tried when no court could legally be held.

The Thirty-Third circuit court district was created by the act approved March 14, 1924, and consists of the counties of Leslie and Perry. By that act a term of the court in Perry was provided, beginning on the third Monday in April and continuing 24 juridical days. Acts 1924, p. 50. The term at which appellant was indicted and tried began on the third Monday in April and continued 24 juridical days. But by an act approved March 25, 1926, the April term of the Perry circuit court was not provided for, and that act, which repealed all acts and parts of acts in conflict therewith, contained the following emergency clause:

> "Owing to the congested condition of the docket in said Thirty-Third judicial district an emergency is hereby declared and this act will be effective upon its passage and approval by the Governor." Acts 1926, c. 54, section 2.

If the emergency clause was valid, no session of the Perry circuit court could legally be held in April after this act was approved on March 25th, and this is the only question to be decided on the appeal. Section 55 of the Constitution is in these words:

> "No act, except general appropriation bills, shall become a law until ninety days after the adjournment of the session at which it was passed, except in cases of emergency, when, by the concurrence of a majority of the members elected to each house of the General Assembly, by a yea and nay vote, entered upon their journals, an act may become a law when approved by the Governor; but the reasons for the emergency that justifies this action must be set out at length in the journal of each house."

This provision is clearly a limitation upon the power of the Legislature to make an act take effect from its approval. It has been the uniform custom of the Legislature, under the Constitution, to spread all acts on the journal when passed in each house, and to insert in the act the reasons for the emergency requiring the act to take effect upon its approval by the Governor. In this way the reasons for the emergency are set out at length in the journal in each house. This has been the universal

custom of the Legislature. It will be observed that the emergency is declared to exist "owing to the congested condition of the docket in said Thirty-Third judicial district," and no other reason is assigned.

Without quoting at length the two acts, we will set out in parallel columns how the courts were provided under each act:

| Perry 1924. | Perry 1926. |
|---|---|
| 3 Monday April 24 days. | 3 Monday February 24 days. |
| 2 Monday September 24 days. | 2 Monday June 24 days. |
| 3 Monday November 24 days. | 2 Monday September 24 days. |
| | 4 Monday November 24 days. |
| Leslie. | Leslie. |
| 3 Monday March 18 days. | 3 Monday March 18 days. |
| 3 Monday August 18 days. | 3 Monday August 18 days. |
| 1 Monday November 12 days. | 2 Monday November 12 days. |
| Acts 1924, p. 50. | Acts 1926, p. 168. |

It will be seen that no substantial change was made in the courts in Leslie county. In fact, the only change made in that county was to postpone the November term from the first Monday in November to the second Monday in November and this change would have taken effect if the act had contained no emergency clause, for the act made no change in the courts in Leslie county until November, 1926. It will also be observed that the most substantial change in Perry county was to add the February term. But, as the act was approved on March 25, this provision of the act would have been equally effective if the act had taken effect 90 days after the Legislature adjourned. The only other substantial change in Perry county was to postpone the April term until the second Monday in June. This would have only added to the congestion of the docket; there was less congestion if the court was held in April. It is thus apparent that there was no emergency from the congestion of the docket requiring the act of 1926 to take effect from its approval by the Governor. This is apparent on the face of the two acts.

It will be observed that the Constitution requires that the reasons for the emergency, that justifies this action, must be set out at length. There could be no possible reason for this provision in the clause limiting the power of the Legislature to make an act take effect upon its approval by the Governor, unless it was intended

that an emergency clause should not take effect in violation of the provision. To hold otherwise would be to give no effect to this restriction on the power of the Legislature and to hold in effect that the Legislature can make any act take effect immediately at its will. The Constitution of Maine contains a clause very similar to our Constitution. Holding that an act did not take effect immediately, when no emergency in fact was shown, the court, in Payne v. Graham, 118 Me. 251, 107 A. 709, 7 A. L. R. 516, said:

"We think it clear that the above-quoted language of the Maine Constitution (Amended Const., art. 4, pt. 3, section 16) creates a limitation upon legislative power, and that without conforming to it no act can be made an emergency act, and as such be given immediate effect."

In an elaborate note to that case the authorities on the question are collected, and, while there are cases holding that the legislative declaration of the emergency is conclusive, none of these cases involved a constitutional provision requiring the facts constituting the emergency to be *"set out at length."* The question also came before the Supreme Court of Illinois in Graham v. Dye, 308 Ill. 283, 139 N. E. 390. Although the Constitution of Illinois is not so explicit as the Constitution of Kentucky, the court, holding the act void where no actual emergency appeared, although one was attempted to be declared, said:

"The Constitution does not authorize the passage of an emergency statute, except in case an emergency exists making it important, if not absolutely necessary to accomplish the full purpose of its enactment, that it take effect immediately upon its approval, and by plain language requires the expression of what the emergency is in the preamble or body of the act. To say the mere declaration that an emergency exists fulfills the requirement of the Constitution would be a plain disregard of the language that the emergency shall be expressed in the preamble or body of the act. The statement that an emergency exists is not an expression of the emergency."

These opinions seem to be sound and to declare the only rule that will give any effect to the manifest purpose

of the Constitution in restricting the power of the Legislature in passing laws to take effect immediately. When a law takes effect 90 days after the Legislature adjourns, this gives time for the law to be published and for the officials of the state, as well as the people, to conform to it. It has been held that it will be conclusively presumed that an act, which was signed by the presiding officer of each house and approved by the Governor, was duly passed, and that evidence will not be heard to the contrary. But no evidence is offered here to contradict the act. The act contains on its face the evidence of the infirmity of the declared emergency. For the court must take notice of the uniform mode of doing business by the Legislature, for the last 30 years, under the Constitution.

The court, therefore, concludes that the emergency clause in this bill was ineffective and that the bill took effect 90 days after the adjournment of the Legislature. This being true, the term of circuit court was properly held in April under the act of 1924, and, no other objection being shown to the proceeding, the judgment cannot be disturbed.

To read the journals here is not to hear evidence to impeach the signatures to the bill, or anything in it, as in Lafferty v. Huffman, 99 Ky. 80, 35 S. W. 123, 18 Ky. Law Rep. 17, 32 L. R. A. 203. The infirmity appears on the face of the act.

Judgment affirmed. Whole court sitting.

Chief Justice Clay and Judges Dietzman and McCandless dissenting.


### DISSENTING OPINION BY JUDGE DIETZMAN.

In so far as the majority opinion holds that section 2 of chapter 54 of the Acts of 1926 is unconstitutional, I am impelled to dissent: (a) First, because, in my judgment, the majority opinion is in direct conflict with Lafferty, et al. v. Huffman, et al., 99 Ky. 80, 35 S. W. 123, 18 Ky. Law Rep. 17, 32 L. R. A. 203, and Vogt v. Beauchamp, 153 Ky. 64, 154 S. W. 393; and (b) secondly, because, in my judgment, the courts have no power to inquire into the reasons why the Legislature deemed it necessary to declare that an act should become effective immediately on its passage. Considering these matters

in order, I first turn to section 55 of the Constitution, which reads:

> "No act, except general appropriation bills, shall become a law until ninety days after the adjournment of the session at which it was passed, except in cases of emergency, when, by the concurrence of a majority of the members elected to each house of the general assembly, by a yea and nay vote, entered upon their journals, an act may become a law when approved by the Governor; but the reasons for the emergency that justifies this action must be set out at length in the journal of each house."

Although it is the usual custom, as the majority opinion says, to set out in the act itself the reasons for the emergency because of which it is the will of the Legislature that the act should become immediately effective, it will be noted that the Constitution makes no such requirement. In this, our Constitution differs from the Maine Constitution construed in Payne v. Graham, 118 Me. 251, 107 A. 709, 7 A. L. R. 516, and on which the majority opinion relies. All that our Constitution provides is that the reasons for the emergency must be set forth at length in the journal of each house. The majority opinion necessarily rests on the assumption that the only reasons set out in the journal of each house are the reasons which appear in the bill itself as finally enacted. Although this assumption may in fact be true, yet there is, of course, no way in the world to know that it is true, except from an inspection of and a comparison with the journals of each house. In the absence of such an inspection and comparison, the respect due from the judicial branch of the government to the co-ordinate legislative branch should dictate the assumption that the Legislature, when it passed an act with an emergency clause, had good and valid reasons for so doing, and that, although on the face of the bill itself the reasons therein set out might not sustain the emergency clause, yet, as the Constitution says that the place to set out the reasons is in the journals and not in the act, such reasons in the act should be regarded as so much surplusage—just as we would do in a cognate case of an indictment where matter appears that has no place in an indictment—and it should be conclusively assumed that the Legislature spread on

its journals, where the Constitution said it should, the valid reasons for the emergency clause.

In Lafferty, et al. v. Huffman, supra, and Vogt v. Beauchamp, supra, we held that, where a bill had been duly enrolled, signed by the presiding officers, certified to the Governor as having been duly enacted, and approved by him, the courts could not look at the journals of the house to see if the bill had in fact passed.  Indeed, in the Vogt case, the journals showed that the act had been defeated in the Legislature.  Despite section 46 of the Constitution, which, in effect, provides that no bill shall become a law, unless on its final passage it receives the vote prescribed by that section, the vote to be taken by yeas and nays and entered on the journal, we held in the cited cases that the act, when so signed, certified, and approved, could not be impeached by the journal of either house.  This ruling is in accord with the overwhelming weight of authority, especially that of the Supreme Court.  See Field v. Clark, 143 U. S. 649, 12 S. Ct. 495, 36 L. Ed. 294.  The reasoning of the court in the Lafferty case, speaking through Judge Hazelrigg, is to my mind unanswerable.

The Lafferty and Vogt cases rest necessarily on the proposition that, when the Legislature through its proper officers has certified that a bill has passed, it must be *conclusively* presumed that the Legislature has complied with its constitutional duties in the enactment of such bill.  If it has not, the correction lies, not with the court, but with the people.  As we said in the Lafferty case:

"It is said, however, that such a conclusion results in leaving the legislative department free to nullify the plain provisions of the Constitution, and refuse to comply with the formalities required by that instrument in the enactment of the laws.  If this is true, it does not follow that the courts may interfere with the processes of the Legislature in that respect.  If that department fails or refuses to do the bidding of the Constitution, it is responsible to the people, and not to the courts.  Besides, an assumption that it will so fail or refuse is not to be made the basis of judicial action.  To the argument that, if the authenticated roll is conclusive upon the courts, then less than a quorum of each house may, by the aid of corrupt presiding officers, impose laws

upon the state in defiance of the inhibition of the Constitution, the Supreme Court of Indiana, in Evans v. Brown, 30 Ind. 514 (95 Am. Dec. 710), responded thus: 'It must be admitted that the consequence stated would be possible. Public authority and political power must of necessity be confided to officers who, being human, may violate the trusts reposed in them. This, perhaps, cannot be avoided absolutely, but it applies, also, to all human agencies. It is not fit that the judiciary should claim for itself a purity beyond others, nor has it been able at all times with truth to say that its high places have not been disgraced. The framers of our government have not constituted it with faculties to supervise co-ordinate departments, and correct or prevent abuses of their authority. It cannot authenticate a statute. That power does not belong to it, nor can it keep the legislative journal. It ascertains the statute law by looking at its authentication, and then its function is merely to expound and administer it. Nor is there any great force in the argument which seems to be regarded as of weight by some American courts that some important provision of the Constitution would be a dead letter if inquiry may not be made by the courts beyond the rolls. This argument overlooks the fact that legislators are sworn to support the Constitution, or else it assumes that they will willfully violate that oath. It is neither modest nor just for judges thus to impeach the integrity of another department of government, and to claim that the judiciary only will be faithful to its obligation.' "

If the Lafferty case be sound, then by a parity of reasoning, if the Legislature has declared that an emergency exists for which reason the act should become immediately effective, it should be conclusively presumed that the Legislature has complied with its constitutional duties in the enactment of such an emergency and has spread on its journals, where the Constitution says it should be spread, valid reasons for such emergency. Even though the bill in itself carries reasons not valid for such an emergency, no assumption should be indulged that the Legislature did not put where the Constitution said they should be put the valid reasons necessary to support that action. Under the Lafferty case, such assumption is conclusive and we cannot look to the journals

to see whether it is well founded or not. When the act is enrolled, signed, certified, and approved, it is conclusively presumed, under the Lafferty case, to have been passed in accordance with the constitutional requirements. To say that we are not in the case before us, impeaching the act by the journals of the house is, with all due respect to my brethren of the majority, but a dogmatic assertion, which will not bear analysis. If the assumption is that the journals support the constitutional passage of an act, the only way to find out that they do not is to look at them, and, if you do and find they do not, then you have impeached the act by the journals. The majority opinion, in the light of the Lafferty and Vogt cases, brings us to this result: We cannot look at the journals to see whether an act ever became a law because not passed by a majority of the votes, but we can look to see when it is to become a law because valid reasons for the emergency are not on the journals.

(b) I again call attention to section 55 of the Constitution. As stated, this section does not require the reasons for the emergency to be set out anywhere but on the journals of the houses. As the journals can never be used to impeach a bill, it must have then been contemplated that the reasons which should actuate the Legislature could never be inquired into by any other branch of the government because such reasons were required to be spread only in a place which could not be used to impeach the bill. Further, section 55 of the Constitution plainly vests in the Legislature the power and jurisdiction to determine whether an emergency exists. Although the majority opinion in effect concedes this, yet it says that the requirement that the reasons for the emergency be set out at length on the journals of each house "is *clearly* a limitation upon the power of the Legislature to make an act to take effect from its approval." That henceforth, under the majority opinion, it will be a limitation I cannot gainsay. But I do say that it is not "clearly" a limitation and that, further, in my judgment, it was never intended to be a limitation. No one who is familiar with the history of this state can fail on reflection to remember how restive our people have been in connection with the power of the courts to declare the work of the Legislature invalid because unconstitutional. The attitude of our people blazed forth in the new and old court controversy. It reached an

acute stage when the United States Supreme Court held unconstitutional our occupying claimant laws. It is passing strange, then, that our people, when they came to frame their fundamental law, would, after vesting the exclusive jurisdiction in the Legislature to determine whether a bill should become immediately effective or not, then vest in the court the review of the question whether the Legislature had wisely exercised that jurisdiction. Is not the requirement that the reasons be entered on the journal rather for the purpose that there shall be a public record of such reasons open for public inspection and for the responsibility for which the people could hold the legislators to an account, rather than that it is a limitation of the Legislature's power as the majority holds? Section 77 of the Constitution vests in the Governor the pardoning power, but requires him to file with each application for a pardon the reasons for his decision thereon. Is this a limitation on his pardoning power? Are all his pardons subject to review by the court because his reasons for his decision may perchance be invalid? Plainly not. These requirements were not limitations, but intended for the purpose of having a public record whereby the people could check and judge the actions of its chief executive and its legislators. In Van Kleeck v. Ramer, 62 Colo. 4, 156 P. 1108, in discussing this question, the Supreme Court of Colorado said:

"The answer to this proposition is that under the Constitution the General Assembly is vested with exclusive power to determine that question, and its decision can no more be questioned or reviewed than the decision of this court in a case over which it has jurisdiction. It will not be presumed that the General Assembly will disregard its duty or fail to observe the mandates of the Constitution, or not act honestly. Neither can it be assumed that the courts are bettter able to determine whether a law is immediately necessary for the preservation of the public peace, health, or safety, than the Legislature. Power may be abused, but that is not a valid reason for one co-ordinate branch of the government to assign for limiting the power and authority of another department. The judicial department is as much bound by the constitutional provisions as any other. 'It cannot run a race of opinions upon points of right reason and expediency with the lawmaking power.'"

In Kadderly v. Portland, 44 Or. 118, 74 P. 710, 75 P. 222, the Oregon Supreme Court, in discussing the same question, said:

"But, it is argued, what remedy will the people have if the Legislature, either intentionally or through mistake, declares falsely or erroneously that a given law is necessary for the purposes stated? The obvious answer is that the power has been vested in that body, and its decision can no more be questioned or reviewed than the decision of the highest court in a case over which it has jurisdiction. Nor should it be supposed that the Legislature will disregard its duty, or fail to observe the mandates of the Constitution. The courts have no more right to distrust the Legislature than it has to distrust the courts. The Constitution has wisely divided the government into three separate and distinct departments, and has provided that no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in the Constitution expressly provided. Const. art. 3, section 1. It is true that power of any kind may be abused when in unworthy hands. That, however, would not be a sufficient reason for one co-ordinate branch of the government to assign for attempting to limit the power and authority of another department. If either of the departments, in the exercise of the powers vested in it, should exercise them erroneously or wrongfully, the remedy is with the people, and must be found, as said by Mr. Justice Strahan in Biggs v. McBride (1889) 17 Or. 640, 21 P. 878, 5 L. R. A. 115, in the ballot box."

See, further, 7 A. L. R. 522, et seq. I am therefore clearly of the opinion that the legislative determination of whether an act shall become immediately effective or not is conclusive and may not be inquired into by the courts.

For the two reasons I have thus elaborated, I cannot agree with the majority in holding section 2 of chapter 54 of the Acts of 1926 unconstitutional.

I am authorized to state that Chief Justice Clay and Judge McCandless concur in these views and this dissent.