# Daniel's Adm'r v. Hoofnel et al.

Oct. 21, 1941.

836

Howell W. Vincent and Joe S. Garman for appellant.

Rodes K. Myers for appellee Hoofnel.

Hubert Meredith, Attorney General, for the Commonwealth and Board.

Maurice D. Burton for City of Bowling Green.

Max B. Harlin for National Surety Co.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing in part and affirming in part.

On the night of September 12, 1937, Henderson Daniel, a guest in an automobile driven by James Goodrum through the campus of the Western State Teachers' College at Bowling Green, was struck by a bullet fired at the car by Aubrey K. Hoofnel, a night watchman or police officer, because it would not stop on his command. Daniel died almost instantly. Pursuant to a joint resolution of the Legislature, Chapter 211, Acts of 1938, Daniel's administrator filed suit for damages for his death against the State, the Board of Regents of the College, Hoofnel, the City of Bowling Green, and the National Surety Company. Plaintiff dismissed the suit against the surety company when it appeared that its bond to the College did not cover anything but loss through embezzlement or diversion of property by its agents and employees, including Hoofnel by name. The court peremptorily instructed the jury to return a verdict for the State and the Board of Regents of the College upon the grounds that Hoofnel was acting in his capacity as a policemen of the city when he fired at the

automobile, and dismissed the suit against the city on the ground of its non-liability as a governmental agency. A verdict for $800 was returned against Hoofnel individually. The administrator appeals, but concedes the propriety of the dismissal of the action against the city.

Before discussing the particular ground upon which the directed verdict for the Commonwealth and College was given, and an error in the admission of evidence, we consider the more basic argument of the Attorney General, representing the Commonwealth and the Board of Regents of the College. He argues that the Legislature had no authority to waive the immunity of the College from liability for the tort by a resolution, and did not in fact do so.

The College (Section 4527-44, Statutes), like other specially created public bodies corporate exercising governmental functions and expressly made amenable to suit, is not liable for the torts of its officers or agents, the exemption being derived from or existing in the sovereignty of the state itself. Leavell v. Western Kentucky Asylum, 122 Ky. 213, 91 S. W. 671, 4 L. R. A., N. S., 269, 12 Ann. Cas. 827; Zoeller v. State Board of Agriculture, 163 Ky. 446, 173 S. W. 1143; Kentucky State Park Commission v. Wilder, 256 Ky. 313, 76 S. W. (2d) 4; Wallace v. Laurel County Board of Education, 287 Ky. 454, 153 S. W. (2d) 915. But if the legislature has the power to waive the state's own immunity by resolution, it undoubtedly has the power to waive its agency's immunity in the same manner.

More fundamental is the question as to the constitutional limitations upon the legislature exercising such power by special resolution in either case. Section 231 of the Constitution is:

"The general assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth."

The three previous constitutions of Kentucky contain the same provision except that the word "may" has been substituted for "shall"; but throughout the entire history of the state the general assembly has never enacted a general law. Divine v. Harvie, 7 T. B. Mon. 439, 23 Ky. 439, 18 Am. Dec. 194; Commonwealth v. Haly, 106 Ky. 716, 51 S. W. 430, 431. It has always been the practice to waive sovereign immunity and authorize suits by

special resolutions. Like our present constitution, Section 3, all others contained the fundamental declaration that no man, or set of men, are entitled to exclusive privileges except in consideration of public services; but this has never been deemed to deny the right of the state to waive its exemption from suit in any particular case. However the other constitutions did not prohibit the general assembly passing local or special acts as does Section 59 of the present constitution, Subsection 29 of which prohibits the enactment of any such law "where a general law can be made applicable." The effect of this limitation upon special resolutions authorizing individuals to prosecute suits against the state was before the court not long after the adoption of the Constitution, in Commonwealth v. Haly, supra. The court reasoned that such a resolution, although admittedly special in that it is for the sole benefit of a certain individual, can not be regarded as being embraced within the meaning and spirit of a general law that could be made applicable. The interpretation was influenced by the unquestionable right of a citizen, as in former times, to petition his sovereign to remedy a wrong, and by the fact that it had been the policy of the legislature, even then for more than a century, not to pass a general law authorizing suits against the state through which "unnumbered woes may come," instead of keeping "in its own power the granting of justice to its creditors." From time to time since that opinion was delivered, the court has considered the question. A late case in which it was particularly considered is Commonwealth v. Bowman, 267 Ky. 50, 100 S. W. (2d) 801. There are many earlier and later cases recognizing validity of similar resolutions.

A full reconsideration of the question has been given in this case. Regardless of what the views of the court as now constituted may be as to the soundness of the construction originally given the Constitution in Commonwealth v. Haly, supra, we are of the opinion that the construction should be adhered to under the doctrine of stare decisis. The maxim or phrase is: "Stare decisis et non quieta movere," to stand by precedents and not disturb settled points. This wholesome rule is not inflexible or so imperative as to require perpetuation of error, but departure from the policy it declares can be justified only upon substantial grounds. The force of the rule depends upon the nature of the

question to be decided and the extent of the disturbance of rights and practices which a change in the interpretation of the law or the course of judicial opinions may create. Cogent considerations are whether there is clear error and urgent reasons "for neither justice nor wisdom requires a court to go from one doubtful rule to another," and whether or not the evils of the principle that has been followed will be more injurious than can possibly result from a change. 14 Am. Jur., Courts, Sections 65, 125; 21 C. J. S., Courts, Section 193, pp. 322, 324; Cooley's Constitutional Limitations, p. 115; Tribble v. Taul, 7 T. B. Mon. 455, 23 Ky. 455; Oliver Co. v. Louisville Realty Co., 156 Ky. 628, 161 S. W. 570, 51 L. R. A., N. S., 293, Ann. Cas. 1915C, 565; Home Insurance Co. v. Smither, 199 Ky. 344, 251 S. W. 169; Stoll Oil Refining Co. v. State Tax Commission, 221 Ky. 29, 296 S. W. 351; Kentucky Utilities Co. v. Farmers' Co-op. Stock Yards Co., 246 Ky. 40, 54 S. W. (2d) 364; Hubley v. Wolfe, 259 Ky. 574, 82 S. W. (2d) 830, 101 A. L. R. 1359; Liberty National Bank & Trust Co. v. Loomis, 275 Ky. 445, 121 S. W. (2d) 947, 131 A. L. R. 1419. And since it is of the utmost importance that the organic law be of certain meaning and fixed interpretation, decisions construing a constitution should be followed in the absence of strong reasons for changing them. Cooley's Constitutional Limitations, p. 124; Scown v. Czarnecki, 264 Ill. 305, 106 N. E. 276, L. R. A. 1915B, 247, Ann. Cas. 1915A, 772. Compare Bankers Bond Co. v. Buckingham, 265 Ky. 712, 97 S. W. (2d) 596; Payne v. City of Covington, 276 Ky. 380, 123 S. W. (2d) 1045, 122 A. L. R. 321. To change the interpretation of the present Constitution which has been consistently adhered to for forty-two years, would be to upset governmental policy followed since the foundation of the Commonwealth 150 years ago.

We, therefore, again hold the legislature may by special resolution waive the state's immunity from suit and liability for the torts of its officers, agents and employees.

The resolution, chapter 211, Acts of 1938, authorizes Daniel's administrator to file and prosecute an action against the Commonwealth of Kentucky and the Board of Regents of the Western Kentucky State Teachers' College "for the purpose of determining the liability of the Commonwealth of Kentucky for such injuries and

death, if any there be, which injuries and death arose out of the carelessness and negligence of the Commonwealth of Kentucky or its governmental agency, to-wit, the Western Kentucky State Teachers' College, then and there acting through its agents or employees, and in the event said suit or proceeding is settled or compromised or is reduced to judgment, the amount or amounts of said judgment, or compromise, or settlement growing out of said suit shall be paid by the Auditor of Public Accounts by a warrant or warrants drawn on the State Treasury of the State of Kentucky and payable out of the General Fund.''

It is submitted the resolution does not attempt to fix the liability of the College or allow any judgment to be rendered against it. We think that construction too narrow. It does authorize suit against the College for the purpose of ascertaining the liability of the Commonwealth for its negligence or that of its ''governmental agency, to-wit, the Western Kentucky State Teachers' College'' through ''its agents or employees.'' This recognizes the responsibility of the state itself for the claimed tort of the employee of its agency. The payment of any judgment is directed to be out of the general fund and not out of the appropriation of funds for the maintenance of the College, but we do not regard this fact as being equivalent to not authorizing the fixing of liability of the College which was elsewhere expressed. Often resolutions of this character authorize suit only against the Commonwealth, but it is not unusual to authorize suit against a particular agency of the state, sometimes independently and sometimes in connection with the Commonwealth. Commonwealth v. Daniel, 266 Ky. 285, 98 S. W. (2d) 897; Commonwealth v. Bowman, 267 Ky. 50, 100 S. W. (2d) 801; Commonwealth v. Madison, 269 Ky. 571, 108 S. W. (2d) 519. We think the purpose of the present resolution was to remove any question that immunity of both the state and its agency was being waived and consent was being given to sue both as interested parties, the College as the subordinate and the Commonwealth as the principal.

For seventeen years Hoofnel had been employed by the College as a night watchman. His duties were whatever were placed upon him by the president of the institution. He was under bond to it as an employee. In a statement filed with the Division of Personnel Effi-

ciency of the Department of Finance at Frankfort, signed by the president, Hoofnel's duties were specifically outlined as those of a night watchman, including the duty to police the grounds of the College at night and to "watch the traffic on the drives and to stop speeding." The College paid his entire salary and furnished him with a uniform like that of a city policeman, and perhaps furnished him his pistol. He also carried a badge of a city patrolman.

Several years after Hoofnel became a night watchman at the College, the City of Bowling Green enacted an ordinance authorizing the mayor to appoint "a College Hill policeman and a merchants' policeman, who shall have all the authority of the regular police officers of the city, but the duties of the College Hill policeman shall be ordinarily confined to College Hill with its environments unless called upon special occasions for outside service by the mayor." It was provided that his salary should be paid by the Board of Regents of the College. Annually thereafter Hoofnel was sworn as such officer by the mayor of the city. He never executed bond as a city policeman or received any order from the mayor or made any report to the chief of police. He had made arrests of persons who were convicted in the city court, but the implication is that they were for offenses committed on the campus. All of his orders without exception were given him by the College authorities.

The circumstances of the homicide are not in dispute. About eleven o'clock at night the automobile in which the deceased was riding with Goodrum and a young lady was heard coming at a rapid speed around the driveway in front of the Administration building of the College. Estimates of speed vary from twenty-five to forty-five miles an hour. Hoofnel stepped into the driveway, called upon the driver to stop, and waved his search light. The car did not stop but forced him to step or jump out of its way. After it passed Hoofnel fired at the tire. The bullet hit the paving and ricocheted into the car, striking Daniel in the back side of his head. Hoofnel testified that his sole purpose was to stop the speeding and that what he did was as a city policeman. Obviously that is a matter of opinion. There was a city ordinance prescribing the speed of ten miles an hour at this point.

Notwithstanding his testimony, it seems to us all the circumstances prove that Hoofnel was acting as an agent or employee of the College and that he had been merely clothed with the power of a city policeman in order to make arrests. As indicated, all his duties were prescribed and his acts and movements directed by the College authorities. In endeavoring to control traffic on the College driveway, though it was within the city limits, he was doing that for which he was employed, and the fact that he was also a city policeman, with circumscribed territory, makes no difference. 39 C. J. 1273; Annotations, 10 A. L. R. 1087; 75 A. L. R. 1176; Cf. Maggard v. Kentucky King Coal Co., 209 Ky. 809, 273 S. W. 451. Upon that conclusion being reached, there is no doubt as to the liability of the Board of Regents and the State, of which it is an agency, for the tort. Robards v. P. Bannon Sewer Pipe Co., 130 Ky. 380, 113 S. W. 429, 18 L. R. A., N. S., 923, 132 Am. St. Rep. 394; Commonwealth v. Hoover's Adm'r, 274 Ky. 472, 118 S. W. (2d) 741; McBee's Adm'x v. Indian Head Mining Co., 280 Ky. 82, 132 S. W. (2d) 515. We are of opinion, therefore, that it was error to give a peremptory instruction for the State and the Board of Regents.

Over plaintiff's objection, the court permitted the assistant Chief of Police of Bowling Green to say in answer to a question as to the recognized practice of police officers in the community in stopping fleeing automobiles, ''If lives were endangered by this high rate of speed that this party was driving at; if he couldn't stop him otherwise he would shoot his tire down if he could.'' Two other policemen testified that it was a recognized practice to shoot a tire down in order to stop an automobile and that they had done so without injuring anyone. The testimony of a former sheriff was to the same effect. The court thought this testimony competent as affording a test or proof of the ordinary practice and custom, or as evidence of reasonable care which persons commonly exercise under similar circumstances. 20 R. C. L. 178. This rule cannot be extended to practices which are obviously dangerous. Custom does not change the quality of an act, and when that quality appears from the act itself, a custom or practice cannot avail to establish as sufficient in law that which is dangerous in fact. 45 C. J. 707. Firing at an automobile for the purpose of shooting down the tire is recognized as criminal negligence. Rowe v. Commonwealth, 206

Ky. 803, 268 S. W. 571; Hill v. Commonwealth, 239 Ky. 646, 40 S. W. (2d) 261; Siler v. Commonwealth, 280 Ky. 830, 134 S. W. (2d) 945. Indeed, the defendant Hoofnel has been convicted of involuntary manslaughter because of the killing of Daniel. The admission of this testimony was error. As the jury found for the plaintiff as against Hoofnel, ordinarily it would be held that this error did not prejudice him. But the damages allowed were so small, only $800 for a death, it is a practical view to take that without this evidence the jury may have returned a verdict more commensurate with the circumstances and the result; hence, we think that the plaintiff is entitled to a new trial as against Hoofnel, along with that against the Commonwealth and Board of Regents.

The judgment in favor of the Commonwealth, the Board of Regents and Hoofnel is reversed. The judgment dismissing the City of Bowling Green and the National Surety Corporation is affirmed.

Whole Court sitting.

Judges Cammack, Tilford, and Ratliff are of opinion the cases holding the legislature may authorize suits against the Commonwealth by special resolution should be overruled. To that extent they dissent.