KELLER, J., DISSENTING:
I concur with the majority opinion's holding that the RTWA survives an equal protection challenge if the rational basis test is the appropriate level of scrutiny to apply; I also agree that the RTWA is not a violation of the Takings Clause. However, I respectfully dissent from the majority opinion's holding that the RTWA was not passed in contravention of Kentucky's Constitution relating to special and emergency legislation.[53]
Section 59 and Special Legislation.
A. The delegates at the 1891 Constitutional Convention made the barring of special legislation a priority.
Lawmakers at the 1891 Constitutional Convention in Kentucky were concerned not just with special laws being enacted for railroad companies, but for all corporations and localities that had enacted laws specific to them. "The universal disapproval of every person in Kentucky suggested sharp and effective remedies for the evils of such a system of law-making. Outside of all questions of economy the demoralization of the Legislature, the inequality of laws so passed had produced the grossest of wrongs, and the demand for a change on this subject was absolute and universal." 1890 KY. CONST. DEBATES , at 5566-67.
"[T]he primary purpose of section 59 was to prevent special privileges for those with wealth and power sufficient to sway the Assembly and to ensure equality under the law." White v. Manchester Enterprise, Inc. , 910 F.Supp. 311, 314 (E.D. Ky. 1996). "Unbridled legislative power had become the captive of special interest groups. Concern for limiting the powers of the legislature in general, and with cutting off special and local legislation in particular, was the primary motivating force behind enactment of the new Kentucky Constitution of 1891." Tabler v. Wallace , 704 S.W.2d 179, 184 (Ky. 1985).
*612 In discussing Section 60 of the Constitution, which also deals with special legislation, the following statements were recorded: "Therefore, that, whilst the law was uniform and general in its provisions, it was not uniform and general in its operation, but was special and local in its operation, dependent entirely upon the will of a particular locality." 1890 KY. CONST. DEBATES , at 5762. "The very definition of a general law is that it must be uniform." Id. Legislators were concerned with all special legislation, not only in its written form, but also in its application.
B. Section 59 requires that a law apply equally to all in a class.
Section 59 of the Kentucky Constitution prohibits special legislation and states, in relevant part:
The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely:
Twenty-fourth: To regulate labor, trade, mining or manufacturing.
...
Twenty-ninth: In all other cases where a general law can be made applicable, no special law shall be enacted.
For a law to be general in its constitutional sense it must meet the following requirements: (1) it must apply equally to all in a class, and (2) there must be distinctive and natural reasons inducing and supporting the classification. Yeoman v. Com, Health Policy Bd. , 983 S.W.2d 459, 466 (Ky. 1998). It is clear that the way the Court draws the "class" has a great impact on the special legislation analysis.
"[T]he fact that the legislature deals with a special subject (such as charitable gaming) does not necessarily make it special legislation." Commonwealth v. Louisville Atlantis Community/Adapt, Inc. , 971 S.W.2d 810, 819 (Ky. App. 1997). "A general law applies to persons or things as a class, while a special law relates to particular persons or things of a class[.]" Id. (quoting Commonwealth v. Smith , 875 S.W.2d 873, 877 (Ky. 1994) (emphasis added). Special legislation "does not have a uniform operation." Reid v. Robertson , 304 Ky. 509, 200 S.W.2d 900, 903 (1947). "[A] statute does not have a uniform operation if it does not relate to persons, entities, or things as a class, but to particular persons, entities or things of a class, either particularized by the express terms of the act or separated by any method of selection from the whole class to which the law might, but for such limitations, be applicable." Id. This includes statutes that "are not general in their application to the class to which they apply, do not bring within their limits all those who are in substantially the same situation or circumstances, or who stand upon the same footing regarding the subject of the legislation, but which, to the contrary, discriminate between persons of the same class doing the same act." Id. While common sense dictates that the legislature is not forbidden to pass laws dealing with labor, this constitutional provision imposes further analysis for constitutional scrutiny when privilege for or discrimination against a special class is alleged. Such constitutional scrutiny requires looking at the plain language of the applicable provisions and then applying the law to the facts of this case. The majority cites to numerous cases for the proposition of showing what a special or general law is, or is not, and to show where courts of this Commonwealth have held laws not violative of Section 59. The majority concludes, without analysis, that the legislature's rational basis for passing the RTWA is enough to survive constitutional attack. Such conclusions run afoul of the principles of constitutional interpretation and the plain language of Section 59.
*613 The law must apply equally to all in a class and there must also be distinctive and natural reasons supporting the classification. Otherwise, the legislation is constitutionally invalid and must be struck as impermissible special legislation. Yeoman , 983 S.W.2d at 466. "There must be substantially more than merely a theoretical basis for a distinction. Rather, there must be a firm basis in reality." Id.
The RTWA provides that no employee is required to become, or remain, a member of a labor organization, or to pay dues, fees, or assessments to a labor organization. The RTWA only applies to employment and union contracts after January 9, 2017, the effective date of the RTWA. The Commonwealth argues that the class under the RTWA is "all employers" and "all employees" in the state.
Accepting this classification as true, the RTWA treats employers and employees within the class differently. The methods and practices of those employers and employees associated with labor organizations are not only altered, but are extinguished going forward. The employers and employees not associated with labor organizations are left in the same position as they were prior to the RTWA. Not only does the RTWA treat union employers and employees disparately to non-union employers and employees, the RTWA applies differently to union employers and employees based on their date of employment, namely, union members prior to January 9, 2017 are exempted. The reasoning for this, of course, is that if the RTWA applied to union contracts prior to this date, it would violate the contracts and taking clauses of the Kentucky and federal Constitutions.[54]
Nevertheless, the RTWA, on its face, treats the union members prior to January 9, 2017 differently than other employees in the state and differently than employees of labor organizations after January 9, 2017. KRS 336.130(3) specifies that "... no employee shall be required, as a condition of employment or continuation of employment, to ... [p]ay ... any dues, fees, assessments, or similar charges of any kind or amount to a labor organization ...." The restriction on payments is explicitly limited to labor organizations as a condition of employment or continuation of employment. Thus, the statute clearly fails to "operate alike on all individuals and corporations." Jefferson Cnty. Police Merit Bd. v. Bilyeu , 634 S.W.2d 414, 416 (Ky. 1982) (citing City of Louisville v. Kuntz , 104 Ky. 584, 47 S.W. 592, 592-93 (1898) ).
Even if we adopt the Commonwealth's proposition that the RTWA is general in its written form, the legislation is special in its operation because it only alters membership and dues for union employers and employees. This is a violation of the legislative intent of the 1891 constitutional convention and the Yeoman test: "it must apply equally to all in a class." Yeoman , 983 S.W.2d at 466 (emphasis added).
The Commonwealth argues that no other state has held right to work acts unconstitutional. After a thorough search of the constitutional provisions in other jurisdictions, only one case was revealed that alleged right to work laws were a violation of that state's special legislation provision. That case was Eastern Oklahoma Bldg. & Const. Trades Council v. Pitts , 82 P.3d 1008 (Okla. 2003), which held the right to work law was constitutional and not a violation *614 of the constitutional provision. The reasoning was that the right to work law had been passed via constitutional amendment, and thus was not passed by the legislature in violation of the constitutional provision. Pitts , 82 P.3d at 1013-14.
Because the RTWA in the instant case was passed by the legislature, without any attendant constitutional amendment, I would hold that it is a violation of the Commonwealth's constitutional provision prohibiting special legislation.[55] Because of this unique constitutional directive, we cannot blindly follow the rulings of our sister courts from around the nation on this matter.
The concurring opinion appears to concede that the RTWA is unconstitutional if we apply our special legislation precedent that has been applicable since the adoption of our current Constitution. The concurrence takes issue with the two-part test in Schoo v. Rose , 270 S.W.2d 940 (Ky. 1954) and Yeoman v. Com., Health Policy Bd. , 983 S.W.2d 459 (Ky. 1998), and the identification of the "class" at issue. "When asserting the validity of a classification, the burden is on the party claiming the validity of the classification to show that there is a valid nexus between the classification and the purpose for which the statute in question was drafted." Yeoman , 983 S.W.2d at 468. What neither the concurring opinion nor the majority state, however, is that this dissenting opinion analyzes the "class" as that which was propounded by the Commonwealth itself for justification of the RTWA. The Commonwealth adamantly argued that the RTWA did not target labor organizations. To quote the Commonwealth's brief to this Court: "It [the RTWA] does not apply only to labor organizations, as the Appellants suggest.
*615 It applies to all organizations dealing with employers. It applies to all employers and all persons in the Commonwealth." (emphasis in brief). The Commonwealth stated: "[S]ection 1 of the KRTW Act applies to all Kentucky employees." (emphasis in brief).
Accepting that classification as true, as the Commonwealth has the burden of proving the validity of the legislation, the RTWA is unconstitutional special legislation as stated in this opinion and the concurrence. "This Court will not permit a statute to survive by simply defining a class in a narrow fashion which will yield, ipso facto, a self-sustaining classification." Yeoman , 983 S.W.2d at 468 (internal citations omitted). Had this writer drawn the class as the concurring opinion suggests - the class being all labor organizations - would we then be criticized for drawing the class too narrowly so as to create a self-sustaining classification? See , id. The RTWA would still be unconstitutional with the application of our controlling legal precedent because union employers and employees before January 9, 2017 are treated differently than those after that date. Of course, the concurring opinion would rather abandon our long-standing precedent than accept this result, but the consensus shows that the RTWA fails regardless of how the class is drawn.
The Commonwealth has maintained that, "economic development was the General Assembly's express purpose for enacting the KRTW Act,"[56] and labor organizations are not being singled out for disparate treatment because "Other private organizations have never been allowed to compel the payment of money from non-members to begin with ."[57] A logical analysis of this evidence would look something like this: According to the Commonwealth, the purpose of the RTWA is to increase economic development and the Act applies to all employers and employees in the state. Assuming the General Assembly intends economic development in the general sense, and not just non-union economic development, why would it choose to enact a law that, by the Commonwealth's own admission, will not affect non-union employers and employees because those private organizations have never received or compelled payment of money from members or nonmembers? The Commonwealth's own arguments for classifications and for justifications of the RTWA fail to pass constitutional muster.
In University of Cumberlands v. Pennybacker , 308 S.W.3d 668 (Ky. 2010), the legislature enacted a statute that provided scholarships for students who were enrolled or accepted for enrollment in a Kentucky pharmacy school and who would serve in Kentucky. Pennybacker , 308 S.W.3d at 685. Because the scholarship was limited to those students attending a pharmacy school with a main campus located in an Appalachian Regional Commission county in the Commonwealth, and only one such pharmacy school existed, this Court held the legislation to be violative of Section 59. Id. at 684-85. Because the scholarships were restricted to those attending a specific school, the General Assembly failed to treat equally all members of the class, despite the requisite "distinctive and natural" reasons for doing so. Id. at 685. The same is true here because, again, by the Commonwealth's own admission, the restrictions and prohibitions in the RTWA only affect union employers and employees because non-union employers and employees do not typically *616 engage in this type of negotiated bargaining.
With all due respect to the wisdom and writing of former Justice Benjamin Cardozo, this Court is not bound by the 1933 interpretation of a provision in the Maryland state constitution. Citing several cases, "[t]he highest court of Maryland has considered this provision, and defined its meaning and effect.... Our endeavor in what follows is to extract the essence of the decisions and to give effect to it as law." Williams v. Mayor and City Council of Baltimore , 289 U.S. 36, 45-46, 53 S.Ct. 431, 77 L.Ed. 1015 (1933) (internal citations omitted). The United States Supreme Court analyzed the special legislation challenge in Williams by looking at how Maryland's courts had interpreted Maryland law. Such analysis provides no relevance to us here today. "Unlike some jurisdictions, stare decisis has real meaning to this Court." Yeoman , 983 S.W.2d at 469. "Regardless of what the views of the Court as now constituted may be as to the soundness of the construction originally given the Constitution ... we are of the opinion that the construction should be adhered to under the doctrine of stare decisis.... And since it is of the utmost importance that the organic law be of certain meaning and fixed interpretation, decisions construing a constitution should be followed in the absence of strong reasons for changing them." Daniel's Adm'r v. Hoofnel , 287 Ky. 834, 155 S.W.2d 469, 471-72 (1941) (internal citations omitted). Absent a constitutional amendment, "to change the interpretation of the present constitution which has been consistently adhered to ..., would be to upset governmental policy followed since the foundation of the Commonwealth 150 years ago." Id. at 472.
But suppose we adopted the concurring opinion's proposition and analyzed special legislation under the framework of Justice Cardozo. "Rather than simply striking down legislation because some people or entities are being treated differently from others, both outside and within the "class" at issue, we must ask why this is the case."[58] In doing this, we would attempt to answer the questions: "Why is the legislature treating one class differently from another? Why is the legislature treating some members of the class differently from others? Does the legislature have good reasons for doing all of this?"[59]
Why would the General Assembly enact a law that only affects labor organizations? What is the condition that the legislature is attempting to remedy? The Commonwealth could answer that its intention is to increase economic investment in the state. Another answer might be that the General Assembly simply disfavors unions. Why is the legislature treating some members of the class differently from others? Does the legislature have good reasons for doing all of this? If the goal is to increase economic investment, the law is greatly attenuated from the purpose because it provides no consequence, good or bad, to the majority of the employers and employees in the state - those being non-union employers and employees. Even under this approach, the RTWA is special legislation. It treats members of a class differently, regardless of how such class is determined, and there is no legitimate reason for this disparate treatment, whether we are relying on the "express purpose" given by the Commonwealth or whether we conclude that this is anti-union legislation.
This discussion brings me to my final point on the issue of special legislation. Today this Court also renders its decision *617 in Commonwealth v. Claycomb , 2017-SC-000614-TG, --- S.W.3d ----, 2018 WL 5994975 (Ky. Nov. 15, 2018). In that case, the majority opinion endorses a strict reading of Section 14 of our state's constitution and interprets such provision based on the plain meaning of the words used. Yet, in the concurring opinion here, it is argued that determining whether legislation constitutes unconstitutional special legislation requires a flexible analysis. So, it appears that to some Justices, the method of constitutional interpretation used varies with the case and the constitutional provision at issue. Thus, as stated before, "the doctrine of stare decisis remains an ever-present guidepost in our undertaking." Caneyville Volunteer Fire Dept. v. Green's Motorcycle Salvage, Inc. , 286 S.W.3d 790, 795 (Ky. 2009). This guidepost is strengthened by the oath I have taken to uphold the Kentucky Constitution.
Section 55 and Emergency Legislation.
The unions argue that the RTWA was passed in violation of Section 55 of the Constitution dealing with emergency legislation. Section 55 states:
No act, except general appropriation bills, shall become a law until ninety days after the adjournment of the session at which it was passed, except in cases of emergency, when, by the concurrence of a majority of the members elected to each House of the General Assembly, by a yea and nay vote, entered upon their journals, an act may become a law when approved by the Governor; but the reasons for the emergency that justifies this action must be set out at length in the journal of each house.
Ky. Const. § 55 (emphasis added).
The "emergency" for the RTWA is that "it is critical to the economy and citizens of Kentucky to attract new business and investment into the Commonwealth as soon as possible, an emergency is declared to exist, and this Act takes effect upon its passage and approval by the Governor or upon its otherwise becoming a law." The RTWA became effective on January 9, 2017, when signed by the Governor, instead of ninety days after the legislative session pursuant to Ky. Const. § 55.[60]
The majority opinion cites to Am. Ins. Ass'n v. Geary , 635 S.W.2d 306, 307 (Ky. 1982), as holding that while a legislative determination of emergency is subject to judicial review, "legislative judgment in that respect must be accorded the same presumption of validity that it enjoys in other instances of constitutional inquiry." If "any rational basis for concluding that the circumstances cited as constituting an emergency justified more expeditious action than would ordinarily be true, the courts should not interfere with the legislative discretion." Geary , 635 S.W.2d at 307. The majority concludes that the legislature's *618 proffered reason for an emergency has a rational basis and will not be disturbed.
In Geary , HB 525 dealt with a surcharge upon insurance premiums collected in the state which funded a trust for the payment of incentives to firemen and policemen. Id. at 306. The emergency in the act stated:
Whereas, the general fund appropriations for fiscal year 1981-82 for the professional firefighters foundation program fund as provided by KRS 95A.200 through 95A.990, and the law enforcement foundation program fund as provided by KRS 15.410 through 15.510 will lapse on June 30, 1982, an emergency is declared to exist, and Sections 6 and 9 of this Act, shall become effective on July 1, 1982, and all other sections of this Act shall become effective upon its passage and approval by the Governor.
In Geary , the Franklin Circuit Court had found that, while the reason contained in the act justifying an emergency was "woefully weak," it was not inclined to declare it unconstitutional. Id. An accurate recitation of the holding in Geary is as follows:
Although we are of the opinion that the court must have the ultimate authority of determining whether an emergency actually existed, the legislative judgment in that respect must be accorded the same presumption of validity that it enjoys in other instances of constitutional inquiry. That is, if there is any rational basis for concluding that the circumstances cited as constituting an emergency justified more expeditious action than would ordinarily be true , the courts should not interfere with the legislative discretion.
Id. at 307 (emphasis added).
In McIntyre v. Commonwealth , 221 Ky. 16, 297 S.W. 931 (1927), this Court's predecessor discussed emergency legislation at length. The Court there analyzed emergency legislation under our state constitution and compared emergency legislation to that in other states:
The question also came before the Supreme Court of Illinois in Graham v. Dye , 308 Ill. 283, 139 N. E. 390 [ (1923) ]. Although the Constitution of Illinois is not so explicit as the Constitution of Kentucky, the court, holding the act void where no actual emergency appeared, although one was attempted to be declared, said:
"The Constitution does not authorize the passage of an emergency statute, except in case an emergency exists making it important, if not absolutely necessary to accomplish the full purpose of its enactment, that it take effect immediately upon its approval, and by plain language requires the expression of what the emergency is in the preamble or body of the act. To say the mere declaration that an emergency exists fulfills the requirement of the Constitution would be a plain disregard of the language that the emergency shall be expressed in the preamble or body of the act. The statement that an emergency exists is not an expression of the emergency."
McIntyre v. Commonwealth , 221 Ky. 16, 297 S.W. 931, 933 (1927).
Based on Geary and the Court's acceptance of the Illinois court's rationale in McIntyre , I am even more convinced the RTWA violates the emergency legislation provision of Section 55. The stated emergency in Geary was "woefully weak," yet it stated more of a basis than the RTWA. The legislation in Geary , with specificity, noted that without expeditious action by the legislature, the incentives provided to firefighters and law enforcement via specific, enumerated statutes would lapse. No *619 such specificity exists within the RTWA. While the statute in the Illinois case, discussed in McIntyre , only stated that an emergency existed, but mentioned nothing about what the emergency was, the RTWA is similar. "To attract new business and investment into the Commonwealth as soon as possible" is not sufficient to satisfy the constitutional provision. If such were sufficient, the state needing more jobs, money and investment would be a pretext to the emergency passage of a myriad of laws. Would there ever be a time when attracting business and investment would not be a goal of the Commonwealth? This writer, as I would hope do most Kentuckians, possesses a desire for increased prosperity for our Commonwealth. However, this desire cannot manifest itself as a constitutional blanket which would cover otherwise infirm legislation.
Geary goes further and holds that the emergency must require more expeditious action than would ordinarily be true. Geary , 635 S.W.2d at 307. Geary involved a trust for state firefighters and police officers that was ready to lapse. There was sound reasoning and urgent need for more expeditious action in that case that is not present here. Therefore this Court should hold, under our clear precedent, that no emergency actually existed. Id.
The majority notes, and I would agree, that policy such as the economic policy which is at the core of the RTWA is within the purview of the General Assembly. The citizens, as voters, sit in judgment of the soundness of legislative policy. However, Sections 59 and 60 of the Kentucky Constitution are unique to the Commonwealth and to our jurisprudence. As a justice on this Court, I took an oath to uphold both the United States and Kentucky Constitutions. This I must do, despite the direction of any prevailing political winds.
Thus, I would hold that the RTWA violates Sections 59 and 60, as well as Section 55 of the Kentucky Constitution, and is therefore unconstitutional on its face and in its application. Without commentary on the propriety of the RTWA as it relates to public policy, our General Assembly must follow the lead of Oklahoma. The policy espoused in the RTWA can properly be implemented in the Commonwealth of Kentucky via appropriate constitutional amendment.
Cunningham and Wright, JJ., join.

I also do not share the majority's opinion as to the applicability of the United States Supreme Court's recent decision in Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31 , --- U.S. ----, 138 S.Ct. 2448, 201 L.Ed.2d 924 (2018). Janus was specific to public sector employees and does not provide relevance to the resolution of the case before this Court.

This writer does not believe that every piece of legislation that has "grandfather" provisions will be deemed impermissible legislation. Constitutionality is decided on a case by case basis, and, despite the majority opinion's contention that this dissenting opinion would hold all grandfather provisions unconstitutional, such attacks would have to undergo the rigorous constitutional analysis engaged herein.

Although we find the RTWA unconstitutional under Sections 59 and 60 of the Constitution, we briefly mention the heightened rational basis standard that has been applied to constitutional challenges enhanced by the special legislation provisions. Consider this scenario: an independent contractor wants to negotiate with an employer that is a member of a labor organization. The independent contractor has the ability to negotiate the terms for the work provided, including payment and any benefits or conditions. The independent contractor could engage in this negotiation process before the passage of the RTWA and maintained such right after January 9, 2017. The passage of the RTWA did not eliminate union workers' abilities to contract with their employers. But what it did do was treat union workers' contracts prior to January 9, 2017 differently than those after the effective date. Collective bargaining units, and those whom the units represent, were deprived of the arm's length negotiation and contract relationships left undisturbed for non-union individuals and entities.
[T]he equal protection provisions of the Kentucky Constitution are enhanced by Section 59 and 60.... So far as we can determine, none has anything like the combination of broad constitutional protection of individual rights against legislative interference vouchsafed by our 1891 Kentucky Constitution. Because of this additional protection, we have elected at times to apply a guarantee of individual rights in equal protection cases that is higher than the minimum guaranteed by the Federal Constitution. Instead of requiring a "rational basis," we have construed our Constitution as requiring a "reasonable basis" or a "substantial and justifiable reason" for discriminatory legislation in areas of social and economic policy.
Elk Horn Coal Corp. v. Cheyenne Resources, Inc. , 163 S.W.3d 408, 418-19 (Ky. 2005) (internal citations omitted). This heightened rational basis standard was not applied by the circuit court, and proper analysis on this issue would require remand. This dissent holds that the RTWA is unconstitutional on other grounds, but notes that the level of scrutiny to be applied to this case is an important issue not to be overlooked.
Here, the RTWA treats business contracts negotiated by a union to perform work differently than it treats contracts negotiated by companies to perform work. Therefore, the statute constitutes special legislation in violation of Section 59 of the Kentucky Constitution.

Commonwealth of Kentucky, Office of the Governor ex rel. Matthew G. Bevin, etc., Brief to Kentucky Supreme Court, p. 16.

Id. at p. 32.

Concurring Opinion.

Id.

The majority opinion cites to McIntyre v. Commonwealth , 221 Ky. 16, 297 S.W. 931, 933 (1927), for the proposition that even if the emergency clause was ineffective, the bill would take effect 90 days after the adjournment of the legislature. McIntyre , as discussed below provides a detailed analysis of emergency legislation, but is distinguishable on this point. McIntyre dealt with an emergency act that created a term for the courts of Perry and Leslie Counties, due to congested dockets. McIntyre was indicted and convicted of murder during a time not provided for by the emergency act. Thus, the question on appeal was whether his conviction could be upheld despite the judgment being rendered when court could not be held pursuant to the act. McIntyre did not deal with a constitutional challenge to the act itself, but rather a challenge to the judgment of conviction attendant to the act. Such a distinguishing point should be noted, as a successful constitutional attack to the RTWA does not mean that the RTWA simply is deemed to have been effective 90 days after the end of the legislative session.